ANDERSON ET AL. *v.* MT. CLEMENS POTTERY CO.

No. 342. Argued January 29, 1946.—Decided June 10, 1946.

 

*Edward Lamb* argued the cause for petitioners. With him on the brief was *Lee Pressman.*

*Frank E. Cooper* and *Bert V. Nunneley* argued the cause and filed a brief for respondent.

*Solicitor General McGrath, William S. Tyson* and *Bessie Margolin* filed a brief for the Wage and Hour Administrator, United States Department of Labor, as *amicus curiae,* in support of petitioners.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Several important issues are raised by this case concerning the proper determination of working time for purposes of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U. S. C. § 201 *et seq.*

The Mt. Clemens Pottery Company, the respondent, employs approximately 1,200 persons at its pottery plant at Mt. Clemens, Michigan; about 95% of them are compensated upon a piece work basis. The plant covers more than eight acres of ground and is about a quarter of a mile in length. The employees' entrance is at the northeast corner. Immediately adjacent to that entrance are cloak and rest rooms where employees may change to their working clothes and place their street clothes in lockers. Different shifts begin at different times during the day, with whistles frequently indicating the starting time for productive work. The whistles which blow at 6:55 and 7:00 a. m., however, are the most commonly used. An

interval of 14 minutes prior to the scheduled starting time for each shift permits the employees to punch time clocks, walk to their respective places of work and prepare for the start of productive work. Approximately 200 employees use each time clock during each 14-minute period and an average of 25 employees can punch the clock per minute. Thus a minimum of 8 minutes is necessary for the employees to get by the time clock. The employees then walk to their working places along clean, painted floors of the brightly illuminated and well ventilated building. They are free to take whatever course through the plant they desire and may stop off at any portion of the journey to converse with other employees and to do whatever else they may desire. The minimum distances between time clocks and working places, however, vary from 130 feet to 890 feet, the estimated walking time ranging from 30 seconds to 3 minutes. Some of the estimates as to walking time, however, go as high as 6 to 8 minutes. Upon arriving at their places of work, the employees perform various preliminary duties, such as putting on aprons and overalls, removing shirts, taping or greasing their arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools. Such activities, it is claimed, consume 3 or 4 minutes at the most. The employees are also allowed a 14-minute period at the completion of the established working periods to leave the plant and punch out at the time clocks.

Working time is calculated by respondent on the basis of the time cards punched by the clocks. Compensable working time extends from the succeeding even quarter hour after employees punch in to the quarter hour immediately preceding the time when they punch out. Thus an employee who punches in at 6:46 a. m., punches out at 12:14 p. m., punches in again at 12:46 p. m. and finally

punches out at 4:14 p. m. is credited with having worked the 8 hours between 7 a. m. and 12 noon and between 1 p. m. and 4 p. m.—a total of 56 minutes less than the time recorded by the time clocks.

Seven employees and their local union, on behalf of themselves and others similarly situated, brought this suit under § 16 (b) of the Fair Labor Standards Act, alleging that the foregoing method of computation did not accurately reflect all the time actually worked and that they were thereby deprived of the proper overtime compensation guaranteed them by § 7 (a) of the Act. They claimed *inter alia* that all employees worked approximately 56 minutes more per day than credited by respondent and that, in any event, all the time between the hours punched on the time cards constituted compensable working time.

The District Court referred the case to a special master. After hearing testimony and making findings, the master recommended that the case be dismissed since the complaining employees "have not established by a fair preponderance of evidence" a violation of the Act by respondent. He found that the employees were not required to, and did not, work approximately 56 minutes more per day than credited to them. He further found that the employees "have not sustained their burden to prove that all the time between the punched entries on the clock was spent in working and that conversely none of the time in advance of the starting time spent by employees arriving early was their own time." Production work, he concluded, "did not regularly commence until the established starting time; and, if in some instances it was commenced shortly prior thereto, it was counterbalanced by occasions when it was started after the hour and by admitted occasions when it was stopped several minutes before quitting time."

As to the time between the punching of the clocks and the start of the productive work, the master made the following determinations:

(1) The time spent in walking from the time clocks to the places of work was not compensable working time in view of the established custom in the industry and in respondent's plant to that effect.

(2) The time consumed in preliminary duties after arriving at the places of work was not compensable here since the employees had produced no reliable evidence from which the amount of such work could be determined with reasonable definiteness.

(3) The time spent in waiting before and after the shift periods was not compensable since the employees failed to prove that if they came in early enough to have waiting time they were required to do so or were not free to spend such time on their own behalf.

The District Court agreed "in the main" with the master's findings and conclusions with one exception. It felt that the evidence demonstrated that practically all of the employees had punched in, walked to their places of work and were ready for productive work at from 5 to 7 minutes before the scheduled starting time, "and it does not seem probable that with compensation set by piece work, and the crew ready, that these employees didn't start to work immediately." The court accordingly established a formula, applicable to all employees, for computing this additional time spent in productive work. Under the formula, 5 minutes were allowed for punching the clock and 2 minutes for walking from the clock to the place of work— a total of 7 minutes which were not to be considered as working time. All minutes over those 7 as shown by the time cards in the morning and all over 5 at the beginning of the afternoon were to be computed as part of the hours worked. The court found no evidence of productive work

after the scheduled quitting time at noon or night. In other words, working time under this formula extended from the time punched in the morning, less 7 minutes, to the scheduled quitting time at noon and from the time punched at the beginning of the afternoon, less 5 minutes, to the scheduled quitting time for the day. No reason was given for the 2-minute differential between the morning and afternoon punch-ins. The use of this formula led the District Court to enter a judgment against respondent in the amount of $2,415.74 plus costs. 60 F. Supp. 146.

Only the respondent appealed. The Sixth Circuit Court of Appeals made a careful examination of the master's findings and conclusions, holding that they were all supported by substantial evidence and were not clearly erroneous. It stated that the District Court erred in failing to accept the finding of the master that productive work did not actually start until the scheduled time and that the formula devised for computing additional productive work was unsustainable because based upon surmise and conjecture. The Circuit Court of Appeals further held that the burden rested upon the employees to prove by a preponderance of the evidence that they did not receive the wages to which they were were entitled under the Act and to show by evidence rather than conjecture the extent of overtime worked, it being insufficient for them merely to offer an estimated average of overtime worked. The cause of action accordingly was ordered to be dismissed. 149 F. 2d 461.

But we believe that the Circuit Court of Appeals, as well as the master, imposed upon the employees an improper standard of proof, a standard that has the practical effect of impairing many of the benefits of the Fair Labor Standards Act. An employee who brings suit under § 16 (b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated dam-

ages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11 (c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence

to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col. L. Rev. 355.

The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11 (c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Story Parchment Co.* v. *Paterson Co.,* 282 U. S. 555, 563. It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages. *Eastman Kodak Co.* v. *Southern Photo Co.,* 273 U. S. 359, 377–379; *Palmer* v. *Connecticut R. Co.,* 311 U. S. 544, 560–561; *Bigelow* v. *RKO Radio Pictures,* 327 U. S. 251, 263–266.

We therefore turn to the facts of this case to determine what the petitioning employees have proved and are entitled to in light of the foregoing considerations:

(1) On the issue as to the extent of the actual productive work performed, we are constrained to agree with the special master that it began and ended at the scheduled hours. This was purely a factual issue. The master made his findings in this respect through the weighing of conflicting evidence, the judging of the reliability of witnesses and the consideration of the general conduct of the parties to the suit. The master thereby concluded that productive work did not begin before the scheduled hours except in a few instances which were counterbalanced by occasions when work began after the scheduled hours or ended before the scheduled cessation of productive work. Our examination of the record leads us to acquiesce in these findings since they are supported by substantial evidence and are not clearly erroneous. And the court below correctly held that the District Court erred in failing to accept these findings and in creating a formula of compensation based upon a contrary view. Rule 53 (e) (2) of the Federal Rules of Civil Procedure. See *Tilghman* v. *Proctor,* 125 U. S. 136, 149–150; *Davis* v. *Schwartz,* 155 U. S. 631, 636–637.

(2) The employees did not prove that they were engaged in work from the moment when they punched in at the time clocks to the moment when they punched out. They were required to be ready for work at their benches at the scheduled starting times. They were given 14-minute periods in which to punch the time clocks, walk to the places of work and prepare for productive labors. But there was no requirement that an employee check in or be on the premises at any particular time during that 14-minute interval. As noted by the District Court, there was no evidence "that if the employee didn't get there by 14 minutes to seven he was fired and there is much testimony to prove that stragglers came in as late as one minute to seven." 60 F. Supp. at 149. Indeed, it would have been impossible for all members of a par-

ticular shift to be checked in at the same time in view of the rate at which the time clocks were punched. The first person in line at the clock would be checked in at least 8 minutes before the last person. It would be manifestly unfair to credit the first person with 8 minutes more working time than credited to the last person due to the fortuitous circumstance of his position in line.

Moreover, it is generally recognized that time clocks do not necessarily record the actual time worked by employees. Where the employee is required to be on the premises or on duty at a different time, or where the payroll records or other facts indicate that work starts at an earlier or later period, the time clock records are not controlling. Only when they accurately reflect the period worked can they be used as an appropriate measurement of the hours worked. In this case, however, the evidence fails to indicate that the time clock records did so mirror the working time. They did not show the time during which the employees were compelled to be on the premises or at any prescribed place of work. They thus could not form the sole basis of determining the statutory workweek. See Interpretative Bulletin No. 13, paragraphs 2 and 3, issued by the Administrator of the Wage and Hour Division, U. S. Department of Labor; Wage and Hour Manual, Cumulative Edition, 1944–1945, p. 234.

(3) The employees did prove, however, that it was necessary for them to be on the premises for some time prior and subsequent to the scheduled working hours. The employer required them to punch in, walk to their work benches and perform preliminary duties during the 14-minute periods preceding productive work; the same activities in reverse occurred in the 14-minute periods subsequent to the completion of productive work. Since the statutory workweek includes all time during which

an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace, the time spent in these activities must be accorded appropriate compensation.

No claim is here made, though, as to the time spent in waiting to punch the time clocks and we need not explore that aspect of the situation. See *Cameron* v. *Bendix Aviation Corp.,* 65 F. Supp. 510. But the time necessarily spent by the employees in walking to work on the employer's premises, following the punching of the time clocks, was working time within the scope of § 7 (a). *Ballard* v. *Consolidated Steel Corp.,* 61 F. Supp. 996; *Ulle* v. *Diamond Alkali Co.,* 8 WHR 1042. Such time was under the complete control of the employer, being dependent solely upon the physical arrangements which the employer made in the factory. Those arrangements in this case compelled the employees to spend an estimated 2 to 12 minutes daily, if not more, in walking on the premises. Without such walking on the part of the employees, the productive aims of the employer could not have been achieved. The employees' convenience and necessity, moreover, bore no relation whatever to this walking time; they walked on the employer's premises only because they were compelled to do so by the necessities of the employer's business. In that respect the walking time differed vitally from the time spent in traveling from workers' homes to the factory. *Dollar* v. *Caddo River Lumber Co.,* 43 F. Supp. 822; *Walling* v. *Peavy-Wilson Lumber Co.,* 49 F. Supp. 846. Cf. *Commissioner* v. *Flowers,* 326 U. S. 465. It follows that the time spent in walking to work on the employer's premises, after the time clocks were punched, involved "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer

and his business." *Tennessee Coal Co.* v. *Muscoda Local,* 321 U. S. 590, 598; *Jewell Ridge Corp.* v. *Local,* 325 U. S. 161, 164–166. Work of that character must be included in the statutory workweek and compensated accordingly, regardless of contrary custom or contract.

But under the conditions prevalent in respondent's plant, compensable working time was limited to the minimum time necessarily spent in walking at an ordinary rate along the most direct route from time clock to work bench. Many employees took roundabout journeys and stopped off en route for purely personal reasons. It would be unfair and impractical to compensate them for doing that which they were not required to do. Especially is this so in view of the fact that precise calculation of the minimum walking time is easily obtainable in the ordinary situation.

We do not, of course, preclude the application of a *de minimis* rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7 (a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. The *de minimis* rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of walking time in issue.

(4) The employees proved, in addition, that they pursued certain preliminary activities after arriving at their places of work, such as putting on aprons and overalls,

removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools. These activities are clearly work falling within the definition enunciated and applied in the *Tennessee Coal* and *Jewell Ridge* cases. They involve exertion of a physical nature, controlled or required by the employer and pursued necessarily and primarily for the employer's benefit. They are performed solely on the employer's premises and are a necessary prerequisite to productive work. There is nothing in such activities that partakes only of the personal convenience or needs of the employees. Hence they constitute work that must be accorded appropriate compensation under the statute. See *Walling* v. *Frank*, 62 F. Supp. 261; *Philpott* v. *Standard Oil Co.*, 53 F. Supp. 833. Here again, however, it is appropriate to apply a *de minimis* doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek.

The master did not deny that such activities must be included within the employees' compensable workweek or that the evidence demonstrated that the employees did in fact engage in such activities. He denied recovery solely because the amount of time taken up by the activities and the proportion of it spent in advance of the established starting time had not been proved by the employees with any degree of reliability or accuracy. But, as previously noted, the employees cannot be barred from their statutory rights on such a basis. Unless the employer can provide accurate estimates, it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence as to the amount of time spent in these activities in excess of the productive working time.

(5) As to waiting time before and after the shift periods, the special master found that the employees had not proved that they were in fact forced to wait or that they were not free to spend such time on their own behalf. This was also a question of fact and the presence of substantial evidence to support the master's finding precludes any different result.

Thus we remand the case for the determination of the amount of walking time involved and the amount of preliminary activities performed, giving due consideration to the *de minimis* doctrine and calculating the resulting damages under the Act. We have considered the other points raised by the petitioners but find no errors.

*Reversed and remanded.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE BURTON dissenting, with whom MR. JUSTICE FRANKFURTER concurs.

The opinion of the Court in this case has gone far toward affirming the Circuit Court of Appeals. I believe it should go the rest of the way.

This Court has agreed largely with the Court of Appeals in holding that the District Court was in error in not accepting the master's findings of fact in the face of Rule 53 (e) (2) of the Federal Rules of Civil Procedure which requires that: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." 28 U. S. C. following § 723 (c).

This Court, accordingly, agrees that the trial court must accept as findings of fact in this case that the productive work performed by the employees began and ended at the regularly scheduled hours of work, on the even quarter-hours; that the time clocks were not controlling in

establishing the exact minute of starting or stopping work; that the time spent in punching time clocks did not constitute compensable work; and that the "waiting time," if any, before and after the shift periods was not compensable time.

This Court also agrees that the District Court was in error in creating a formula of compensation not in accordance with the findings of the master.

The only questions remaining are whether the moments spent in walking from the time clocks to the employees' respective places of productive work within the plant, and the minutes sometimes spent by some of the employees in miscellaneous "preliminary activities" before the scheduled starting times, must be added, as a matter of law "regardless of contrary custom or contract," to the compensatory time of "the statutory week," and, if so, how such additional time can be proved to have been so used in order to make it the basis for additional compensation.

The master determined that the time spent in walking from the time clocks to the places of work was not compensable working time in view of the established custom in the industry and in the plant. Moreover, the employees were free to take whatever course through the plant they desired and to stop off at any point to talk with other employees or to do whatever else they liked. Some workers came to the time clocks as late as one minute before the time to reach their place of productive work. The so-called "preliminary activities" are identified in this case as those of "putting on aprons and overalls, removing shirts, taping or greasing their arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools." The master found that the employees had not offered proof of the time used for these purposes with a sufficient degree

of reliability or accuracy for it to become the basis for recovery of overtime compensation. The employer would have still greater difficulty in keeping an accurate record of the time spent by each employee in such activities. These activities are of such a nature that the knowledge of them and the time spent in doing them rests particularly with the employees themselves. Such activities are of quite a different character from those made the basis of compensable time in the coal mine portal-to-portal cases. *Tennessee Coal Co.* v. *Muscoda Local,* 321 U. S. 590; *Jewell Ridge Corp.* v. *Local,* 325 U. S. 161.

Some idea of the shortness of the time and the smallness of the compensation involved in the "preliminary activities," in comparison with the cumbersomeness of any system for accurately recording the time spent in doing them, is apparent from the formula to which the District Court resorted in attempting to reach its solution of the difficulty. Under that formula, for example, the District Court found no basis for compensation for such activities after the scheduled quitting time. Compensable time spent in such activities was limited to a short period before the scheduled hours of beginning productive work in the morning and again on resuming work after lunch. Employees were allowed, or encouraged, to come to the plant 14 minutes ahead of the quarter hour at which their scheduled productive work began. The District Court estimated that, on an average, seven minutes should be allowed, each morning, for punching a time clock and walking from it to the employee's place of productive work. As to the "walking time" the court said, "the preparation even after punching the clock wouldn't take more than one or one and a half minutes and to the farthest point in the plant from the time clock wouldn't take more than 2 minutes." 60 F. Supp. 146, 149. If an employee came to the plant 14 minutes ahead

of time, this left a maximum of seven minutes, plus "walking time," as the basis for a compensatory claim. The compensatory time in many cases would be much less. Similarly, under the District Court formula, employees returning to work after lunch were estimated to consume five minutes in punching the clock and walking to their places of productive work. This would leave a maximum of nine minutes, plus "walking time." At that hour of the day the workers already would be in their work clothes and there rarely would be more than a minute or two required for the preliminary activities for which compensation was claimed.

The amounts at issue, therefore, might not average as much as five to ten minutes a day a person and would not apply at all to many of the employees. None of this time would have been spent at productive work. The futility of requiring an employer to record these minutes and the unfairness of penalizing him, for failure to do a futile thing, by imposing arbitrary allowances for "overtime" and liquidated damages is apparent.

While conditions vary widely and there may be cases where time records of "preliminary activities" or "walking time" may be appropriate, yet here we have a case where the obvious, long established and simple way to compensate an employee for such activities is to recognize those activities in the rate of pay for the particular job. These items are appropriate for consideration in collective bargaining.

To sustain the position of the Court in requiring these additional moments to be recorded and computed as overtime, it is necessary to hold that Congress, in using the word "workweek," meant to give that word a statutory meaning different from its commonly understood reference to the working hours between "starting" and "quitting" time—or from "whistle to whistle." There is no evidence

that Congress meant to redefine this common term and to set aside long established contracts or customs which had absorbed in the rate of pay of the respective jobs recognition of whatever preliminary activities might be required of the worker by that particular job. For example, if the plant be one located at an inconvenient place, or if the workers have to change into working clothes at the plant, or have to grease or tape their arms before going to work, these are items peculiar to the job, and compensation for them easily can be made in the rate of pay per hour, per week or per piece, and all special stop-watch recording of them eliminated.

In interpreting "workweek" as applied to the industries of America, it is important to consider the term as applicable not merely to large and organized industries where activities may be formalized and easily measured on a split-second basis. The term must be applied equally to the hundreds of thousands of small businesses and small plants employing less than 200, and often less than 50 workers, where the recording of occasional minutes of preliminary activities and walking time would be highly impractical and the penalties of liquidated damages for a neglect to do so would be unreasonable. Such a universal requirement of recording would lead to innumerable unnecessary minor controversies between employers and employees. "Workweek" is a simple term used by Congress in accordance with the common understanding of it. For this Court to include in it items that have been customarily and generally absorbed in the rate of pay but excluded from measured working time is not justified in the absence of affirmative legislative action.

For these reasons, I believe that the judgment of the Court of Appeals should be affirmed.