## MICELI v. KLEINBERGER.
### Civil No. 9251.

United States District Court
E. D. New York.
May 15, 1951.

Louis A. Tuckman, New York City (Harry M. Krokow, New York City, of counsel), for plaintiff.

Samuel D. Smoleff, New York City, for defendant.

BYERS, District Judge.

Here the plaintiff seeks to recover a judgment against the Executrix of his deceased employer for overtime piece-work wages which he says were withheld from him in violation of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The circumstances are unlike any seemingly present in the reported cases involving piece-work overtime.

The enterprise was conducted by Kleinberger, deceased, who employed about fourteen persons in the manufacture of ladies' hand bags at 79 Madison Avenue, Manhattan. The plaintiff thus described his own job as a framer: "I insert the bag into the frame by pressure, squeezing the frame with a machine with two jaws, and by pressing it so as to squeeze the frame down.

"Q. That frame with relation to the handbag, what is its function? A. It holds it while I am inserting the handbag in the frame.

"Q. What is the purpose of the frame itself with relation to the ladies' handbag? It is the body of the handbag, is it not? A. It is really what makes the bag."

From the foregoing, it is understood that the plaintiff assembled certain elements into a completed article; that those elements were made by others who worked on a time basis. If that is so, it would seem that such elements must have been somewhat indiscriminately left lying around at the close of each working day, if the plaintiff's testimony is to be accepted concerning his activity after other workers departed and before they arrived at 8:30 each morning. Perhaps that is what happened, but if so, there is no testimony to that effect, nor would it seem to comport with reasonable probabilities. There was no testimony, for instance, by fellow workers to the effect that it was customary for them to leave bags and frames ready for assembly, piled or otherwise arranged at their departure, and to find assembled handbags on the plaintiff's table or elsewhere, on arrival at the plant on the following day.

There was another piece-worker, the witness Waks, and it seems to be undisputed that he was a more skilled, i. e., a faster worker than the plaintiff and hence his earnings were higher. He says that occasionally he worked overtime, but is not asserting any claim in that behalf. Another piece-worker, Miss Rattman, said that during the seasons (Spring and Christmas) she worked more than forty hours per week but could not answer as to whether she was paid for overtime, because another employee "took charge of that".

Seemingly the plaintiff's cause comes down to this: He says that he had to put in more hours in order to nearly equal the earnings of the more skilful Waks, and therefore he should be allowed to recover alleged overtime at one and one-half regular pay and thus visit upon his employer that higher rate of compensation because he chose this method of bringing himself up fairly close to the level of his fellow worker's performance.

If indeed the law contemplates such a premium upon inferior performance, the assertion of such a claim at least invites careful scrutiny of the evidence adduced in its support, since there is no effort to invoke Section 214 of the Act in plaintiff's behalf.

The plaintiff's employment started in November of 1943, and his claim against the Executrix of Kleinberger is necessarily restricted to the period ended with the death of the latter on November 19, 1947.

It is not without significance that the original complaint asserted a claim for overtime computed at the rate of sixty-three hours per week for the entire period embraced between those dates.

By appropriate proceedings in the cause, an amended complaint became requisite, which resulted in reducing plaintiff's claim from $4,360.50 plus a like amount for liquidated damages, to the sum of $1,276.50 equally to be enhanced, covering the period from July 28, 1946, to December 31, 1947, which is too long by over one month.

The significance of the earlier assertion does not lie in its present infirmity under the law, but in the plaintiff's own testimony

on the trial, that for much of the earlier period for which he originally sued, he knew that he did not work overtime and hence it follows that he had no claim in that behalf. The employer's records (Ex.E) clearly so demonstrate. As to 1943, 1944 and 1945, it was a strike suit to the plaintiff's knowledge, which does not mean that the same is necessarily true for the two later years; however, the plaintiff's testimony as to the period now in suit must be weighed in the light of the allegations of his original complaint.

The plaintiff's earnings in 1946 were about $5,100.00 (p. 101) and $5,000.00 for eleven months in 1947 (p. 102), and it would be of interest to see how these totals compare with time and overtime at the Union rate of $1.50 per hour for the number of weeks during which the plaintiff actually worked in 1946 and 1947, which he says he computes at sixty-three hours per week, as a rough measure of the inherent justice of his cause; not, however, with the thought in mind that such a comparison is dispositive of the plaintiff's cause.

The following is a capitulation of the facts as demonstrated by the evidence:

A.  The plaintiff was engaged in the production of goods for commerce within the Fair Labor Standards Act of 1938 from July 28, 1946, to and including November 19, 1947, as a piece-worker in the employ of Giles D. Kleinberger, deceased, at 79 Madison Avenue, Manhattan, New York City.

B.  At the commencement of this action, some ten months after his employer's death, he was a resident of this district.

C.  The defendant above named is the duly qualified Executrix of the Will of the said Giles D. Kleinberger, deceased, and is sued in her representative capacity; she has no personal knowledge or information concerning the plaintiff's claim, which first came to her attention when service of process in this suit was effected.

D.  The plaintiff claims twenty-three hours of overtime for seventy-four weeks, beginning July 28, 1946, through December 31, 1947 (Ans. to Interrogatory 2). This period embraces nearly six weeks following the death of the testator, which reduces to sixty-eight the number of weeks for which this claim can be deemed to have been asserted.

E.  The plaintiff kept no record of his hours of work per week to substantiate his claim for overtime.

F.  Plaintiff's Exhibits 1, 2 and 3 are note books kept by him as to the pencil entries which show his record in dozens of the handbags which he assembled, at varying prices per dozen ("working rate"—p. 124, Waks), the entries in ink, representing computations of plaintiff's pay, were made by his employer. The said pencil entries have been tabulated in plaintiff's brief and show a variation of a low payment for the week ended June 21, 1947, of $63.90, to a high for the week ended October 18, 1947, of $164.90. It is claimed that the plaintiff worked sixty-three hours in each week during the entire period here involved, with a fluctuation in the hourly rate of from a low of $1.31 for the week ended August 10, 1946, to a high of $2.61 for the week ended October 18, 1947.

G.  The employer's payroll record (Defendant's Ex. E) credits the plaintiff with twenty-six hours for the week ended June 21, 1947, when he was paid the $63.90 above stated. For the week ended October 18, 1947, he is credited with forty hours, and was paid the $164.90 above stated.

H.  The plaintiff produced no book or other record of his own covering the weeks of May 2, 1947, to October 4, 1947, although he claims to have worked sixty-three hours in each week, except for a one-week vacation in July. Defendant's Ex. E credits him with forty hours per week during that period except during the week ended May 30, 1947, when 30½ hours are shown, and June 14, 35½ hours, June 21, 26 hours, August 9, 36 hours, and September 20, 31½ hours.

I.  The plaintiff has failed to produce any record whatever of his own covering the months of May, 1947, to October 4, 1947, inclusive, namely, a period of about 22 weeks embraced within the said 68 weeks.

J.  The plaintiff has no record of work done during the two weeks ended, respectively, November 1, 1946, and November 9,

1946, and defendant's Ex. E shows that none was performed by him during that interval.

K. The plaintiff did no work for the four weeks between December 28, 1946, and January 18, 1947.

L. As to 28 weeks (perhaps 29—see p. 38) out of the total of 68, there is no affirmative proof for the plaintiff, except his oral testimony based upon computations not supported by anything but opinion on his part, that he must have worked an average of 63 hours per week, or 23 hours in excess of 40 as fixed by the Act.

M. That testimony is insufficient to convince this Court of the alleged fact of such average overtime per week.

### Comment

The plaintiff cites Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, which has been examined with care. The following language of the opinion occurs, 328 U.S. at page 687, 66 S. Ct. at page 1192, in connection with records: "Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof. * * * In such a situation [employer's records inaccurate or inadequate, which this plaintiff urges as to Defendant's Ex. E] we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."

In my opinion, the plaintiff's evidence does not meet the requirement so stated, in that: His testimony that he protested to his employer concerning the non-payment of overtime as early as 1943 is incredible since the employer's records demonstrate that for 1943 and the succeeding two years the plaintiff's earnings, which he has computed at the Union scale of $1.50 per hour, are incompatible with such a claim; he failed to call Horowitz as a witness (he was the Union shop foreman, also an employee and present at the trial) to corroborate his assertion of a complaint to him on that subject, in 1943 or any subsequent year; he failed to bring this suit until after it had been shown that this defendant did not include the plaintiff among those employees of her husband to whom she presented his machinery, fixtures and equipment. His resentment at being thus excluded does not disprove his assertion that he had a just claim for overtime pay, but it may well have colored his testimony that he averaged 23 hours per week of such overtime for the entire period now in suit, which fails for not less than one-third of the said 68 weeks.

N. The factor of the number of hours per week of alleged overtime is necessary to the application of the formula stated in Interpretive Bulletin issued by the Office of Administrator, and has not been shown "as a matter of just and reasonable inference", Anderson v. Mt. Clemens Pottery Co., supra, by the testimony in this case as a whole.

### Comment

The witness Silverstein, who was the foreman, testified with reference to the methods employed by Kleinberger and the piece-workers in computing the latter's wages, in part as follows:

"Q. They would adjust the piece-work rates so as to reflect the Union rate of pay? A. Well, I just said I wouldn't say Union wages again. What they understood to be a fair price.

"Q. On a time basis? A. What Mr. Kleinberger and the men worked out on a time basis, what they would figure the time would be for the piece-work. If the price wasn't right they would adjust it, and they would all get together on that.

"Q. So as to reflect their time? A. Yes.

* * * * * *

"Q. How much per hour would they figure? A. I wouldn't know, that was set between themselves."

If it could be seen in this record that any real injustice has been done to this plaintiff, the effort would be made to try to piece out from his testimony a basis for some award in spite of the unconvincing nature of his

testimony, without holding him to proof of 63 hours per week; that, however, seems impossible without indulging in sheer guesswork, for which no basis has been established.

### Conclusion

The complaint must be dismissed with costs, and judgment is directed accordingly.