James P. MITCHELL, Secretary of Labor, United States Department of Labor,

v.

Garabed H. SULAHIAN, d/b/a Novelty Stitching Company.

Civ. A. No. 60-157.

United States District Court
D. Massachusetts.

Dec. 7, 1960.

Edward G. Madden, Boston, Mass., for plaintiff.

Gregory H. Adamian, Cambridge, Mass., for defendant.

CAFFREY, District Judge.

This is an action brought by James P. Mitchell, Secretary of Labor, against Garabed H. Sulahian, doing business as Novelty Stitching Company, on behalf of two former employees of defendant, Mrs. Vanoohy Arsenian and Mrs. Beatrice Arena. This action is brought under the Fair Labor Standards Act of 1938 (as amended 29 U.S.C.A. § 201 et seq.). Jurisdiction is based upon 29 U.S.C.A. § 216(c) and upon 28 U.S.C. §§ 1337 and 1345.

The complaint, as filed, charged defendant with failure to compensate use-plaintiffs at a rate not less than one and one-half times the regular rate at which they were employed for employment in excess of 'forty hours in certain work weeks which allegedly exceeded forty hours.

At the opening of trial counsel stipulated that the plaintiffs abandoned this charge and substituted in lieu thereof a charge of violating Section 6 of the Act, in that it is now alleged that defendant failed to pay the use-plaintiffs the applicable minimum wage of $1 per hour for "homework" performed by the use-plaintiffs for the defendant.

I find that the defendant, Garabed H. Sulahian, sometimes known as Charles Sulahian, was the sole owner and operator of a place of business located at 26 Landsdowne Street, Cambridge, Massachusetts, where, under the name and style of "Novelty Stitching Company," he engaged in the production of novelties, dolls, dolls' clothes, premium articles and related items for interstate commerce. Vanoohy Arsenian was employed by the defendant as a homeworker, stitching dolls and dolls' clothes, between June of 1958 and March of 1959. Beatrice P. Arena was employed by defendant as a homeworker, stitching dolls and dolls' clothes, between August of 1958 and July of 1959. Throughout both periods each use-plaintiff was regularly and customarily employed as a homeworker by defendant, and substantially all of the work produced for the defendant during those periods was for interstate commerce, and was shipped, delivered, transported, offered for transportation, and sold by defendant with the knowledge that shipment, delivery, and transportation thereof in interstate commerce from the Commonwealth of Massachusetts to other

States was intended. At all material times defendant was engaged in interstate commerce and in the production of goods for interstate commerce within the meaning of the Act.

I find that Vanoohy Arsenian and Beatrice Arena each filed with plaintiff a written request to bring this action. There is no dispute between the parties as to the amounts of money actually paid to the two plaintiffs during the periods of their employment. Mrs. Arsenian made 15,433 dolls and was paid therefor $771.65 by defendant, i. e., five cents per doll. Mrs. Arena made 8,510 dolls and received $425.50 from defendant, i. e., five cents per doll. The only factual issue remaining is whether or not these payments amounted to a payment to the plaintiffs of at least $1 per hour for the hours they worked, and this, in turn, depends on the number of dolls that plaintiffs actually made per hour.

29 U.S.C.A. § 206(a) provides:

"Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates (1) not less than $1 an hour * * *."

29 U.S.C.A. § 211(d) provides:

"The Administrator is authorized to make such regulations and orders regulating, restricting, or prohibiting industrial homework as are necessary or appropriate to prevent the circumvention or evasion of and to safeguard the minimum wage rate prescribed in this chapter * * *."

29 U.S.C.A. § 211(c) provides:

Every employer subject to any provision of this chapter or of any order issued under this chapter *shall* make, *keep,* and preserve *such records of the persons employed by him and of the wages, hours,* and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he

shall prescribe by regulation or order * * *."

Regulation 516, sub-part (a) provides:

"*Every employer shall maintain* and preserve *payroll* or other *records* containing the following information and data with respect to each .and every employee to whom both Sections 6 and 7(a) of the Act apply * * * (7) *hours worked each work day and total hours worked each work week.*"

Regulation 516.21(b) provides:

"*Every employer shall maintain* and preserve *payroll* or other *records containing the following information,* and data with respect to each and every industrial *homeworker employed by him * * * (4) with respect to each lot of work:*

* * * * * *

"*V. Hours worked in each lot of work turned in.*

"*VI. Wages paid for each lot of work turned in.*

"(5) with respect to *each worker:*

"*I. Hours worked each week.*"

Regulation 516.21(c) provides:

"In addition to the information and data required in paragraph (b) of this section, *a separate handbook * * * shall be kept for each homeworker.* The information required therein shall be entered by the employer or the person distributing or collecting homework on behalf of such employer each time work is given out to or received from a homeworker. Except for the time necessary for the making of entries by the employer, the handbook must remain in the possession of the homeworker until such time as the Wage and Hour Division may request it. * * * *A separate record and a separate handbook shall be kept for each person performing homework.*"

Despite the great specificity of the above-quoted statute and regulations promulgated thereunder, the defendant neither kept nor attempted to keep any

record whatsoever of the hours actually worked by the homeworkers in question. Defendant likewise failed to provide plaintiffs with the homeworker's handbook. The records kept by defendant did establish the number of dolls given to each plaintiff, the date on which they were given, the date on which they were returned, and the amounts paid to plaintiffs therefor. Absent homeworker's handbooks, each plaintiff testified that she had never kept a record of the hours worked, and, of course, neither plaintiff was under any legal obligation so to do. Mrs. Arsenian testified that in her opinion it required her 28 hours to make 300 dolls, whereas Mrs. Arena testified that it was her opinion that it required her 23 or 24 hours to make 300 dolls.[1] Each plaintiff testified that she had never actually timed herself as to the number of dolls she could make in an hour.

Plaintiffs also offered testimony from a Department of Labor investigator to the effect that on the basis of so-called "time studies" made with reference to four other employees of defendant, the Department of Labor investigator found that the four tested employees could earn, respectively, 90¢, 62½¢, 90¢, and 75¢, per hour making yarn dolls. Since the so-called "time studies" were of but twelve minutes duration as to each of these four workers, I find them of slight, if any, probative value. In the absence of any evidence as to the relative ability, speed, and experience of the plaintiffs as compared to these "time-studied" employees, and lacking any evidence as to the relative abilities of the plaintiffs as compared with three other employees who testified on behalf of the defendant that they could make between 20 and 23 dolls per hour, I likewise find this testimony without material significance.

In cases such as the instant one, in which the employer has totally failed to discharge his statutory obligation to keep records of the hours worked by his employees, the Supreme Court of the United States has indicated that the employee's burden to prove that he was not properly compensated should not be made an impossible hurdle for the employee who brings suit in a District Court, saying, in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, at page 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515:

> "An employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."

Each plaintiff testified that in addition to keeping no records of the hours actually worked, defendant instructed them to report, if anyone inquired of them as to their wages, that they were paid $1 per hour. This testimony, coupled with the testimony of defendant's Office Manager that defendant "could not afford to pay more than five cents per doll for the homework labor" satisfies me that defendant did not attempt to pay nor in fact pay the statutory minimum wage of $1 per hour to the plaintiffs. On all the evidence, I find that each plaintiff had an ability to make 15 dolls per hour and, consequently, was underpaid at the rate of 25¢ per hour for hours worked making dolls. Mrs. Arena made 8,510 dolls which at 15 dolls per hour means that she worked 567 hours, for which she was underpaid a total amount of $141.75. Mrs. Arsenian made 15,433 dolls which at 15 dolls per hour means that she worked 1,028 hours, for which she was underpaid a total amount of $257.

Judgment for the plaintiff Vanoohy Arsenian in the amount of $257, without costs, and judgment for the plaintiff Beatrice Arena in the amount of $141.75, without costs.

---

1. Neither plaintiff had any reservations as to her own speed. Mrs. Arsenian, under cross-examination, made the assertion, "I got more dolls done than anyone else;" and Mrs. Arena, under cross-examination, expressed the opinion, "My hands are very fast—if I can't make it, it can't be made."