W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

G.A.M. ELECTRONICS, INC. and Andrew Nuttle, Defendants.

Civ. A. No. 2563.

United States District Court
D. New Hampshire.

June 16, 1966.

Austin N. Horowitz, Attorney, Dept. of Labor.

Edward G. Madden, Regional Attorney United States Department of Labor, Boston, Mass., for plaintiff.

Clifford J. Moody, Eaton, Eaton & Ross, Manchester, N. H., for defendants.

## OPINION

CAFFREY, District Judge.*

This is a civil action initiated by the Secretary of Labor pursuant to Section 17 of the Fair Labor Standards Act of 1938 (29 U.S.C.A. § 201 et seq.), against G.A.M. Electronics, Inc. and Andrew Nuttle, its President and principal executive officer. After trial I find and rule as follows:

G.A.M. Electronics, Inc., is and at all material times was a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business at Manchester, New Hampshire. Andrew Nuttle at all material times was President of G.A.M. and actively managed, supervised and directed the business affairs and manufacturing operations of the corporation. He has acted directly for the corporation in relation to its employees and is an employer of those employees within the meaning of the Act. G.A.M. has employed about ten persons, primarily at Manchester, New Hampshire, in the manufacture, sale and distribution of ham radio antennas and related equipment for communication systems, and goods produced by these employees have been shipped, delivered, transported and sold in interstate commerce.

In the instant action the Secretary of Labor seeks injunctive relief against the continuance of alleged violations of the regulations promulgated by the Secretary on October 21, 1938, published in 29 C.F.R. 516, with regard to keeping of records as to wages, hours and other information on employees by employers engaged in interstate commerce. The Secretary charges defendants with paying certain employees less than the minimum hourly wage and with failing to pay one and one-half times the regular rate to certain employees who are alleged to have worked work weeks longer than 40 hours subsequent to January 5, 1963. Recovery for allegedly underpaid wages is sought on behalf of three of defendant's employees, Frank W. Dickey, George Noble, and Frederic C. Dumaine, III.

I find that defendant employed Frank W. Dickey, a brother-in-law of Andrew Nuttle, for the period January 5, 1963 to February 1, 1964 at $1.80 per hour for part of the period and $1.90 per hour for the latter part. Mr. Dickey elected to work straight through his 30-minute lunch hour with the result, the Government claims, that in a five-day week he worked an extra 2½ hours. At the trial Dickey testified that he did not ever work over 40 hours a week to his knowledge and that he worked eight hours a day for a total of 40 hours a week. He further testified that the time cards put in evidence as Government Exhibit No. 2 were a true and accurate reflection of the hours he worked. A careful examination of the 56 weekly time cards which constitute part of Government Exhibit No. 2 indicates that on none of them does it appear that Dickey worked more than 40 hours and on a number of them it appears that he worked less than 40 hours. On the basis of these time cards and Mr. Dickey's testimony at the trial I find that Mr. Dickey did not work in excess of 40 hours in any particular week in issue herein and, consequently, that the defendant has no liability to pay him any additional compensation.

George Noble testified that he was employed by the defendant between November 2, 1963 and October 10, 1964 at the rate of $64.00 a week for most of that

* By designation.

period and at $69.00 a week for the last three or four weeks. As part of its Exhibit No. 2, the Government put in evidence 74 weekly time cards covering Noble's employment from June 8, 1963 to November 21, 1964. At the trial Mr. Noble testified that at times, fluctuating from two to four nights a week, he returned to the plant after his evening meal and worked from 5:00 p. m. to 9:30 or 10:00 p. m. He further stated that he was directed by Mr. Nuttle not to punch the time clock in the evening because his (Nuttle's) partners would not stand for the payment of overtime.

Mr. Nuttle testified that Noble punched in and out at all times, except when he was making up time that he had lacking, and that there was a specific company policy forbidding overtime work unless expressly authorized and that overtime was authorized less than once a month. He further testified that the company followed a policy of compensatory time off in order to prevent any employee's work week exceeding 40 hours and, also, that the time cards were a true reflection of the hours worked by employees. This was corroborated by Mrs. Hazel M. Nuttle who was the bookkeeper for G.A.M. during 1963 and 1964. Mr. Nuttle further testified that employees signed their own time cards certifying that the hours recorded thereon were correct. As regards Mr. Noble's claim to overtime work I simply do not credit his testimony and, on the contrary, I believe Mr. Nuttle's testimony. Having in mind Mr. Nuttle's testimony that each employee signed his own time card as routine practice, it is significant to note that 72 of the 74 cards reflecting the hours worked by Mr. Noble bear what purports to be his signature under the certification "Total hours shown is correct." I rule that defendant has no liability to pay any additional compensation to Mr. Noble.

In so ruling as to the claims on behalf of Dickey and Noble, I have in mind that a retired investigator for the Wage and Hour Division, Department of Labor, Mr. Cornelius B. Spaulding, testified that he made an examination of the books and records of G.A.M. in 1960 or 1961 and that he found the company to be in compliance with the provisions of the Fair Labor Standards Act at that time. I likewise have in mind the fact that this complaint is based upon an investigation made in 1964 by Mr. Robert Chauvin, an investigator for the Wage and Hour Division, and that Mr. Chauvin in turn predicated his conclusions that G.A.M. was in violation of the provisions of the Act and the regulations promulgated thereunder primarily on the basis of conversations he had with various employees of G.A.M. It does not appear that these employees at the time of these conversations were under oath and, in any event, the stories they told the investigator were not subject to cross-examination by counsel for G.A.M.

Frederic C. Dumaine, III, testified that he worked for G.A.M. from May 1964 to the end of the year. A payroll card put in evidence as Government Exhibit No. 1 indicates that he began to work for G.A.M. the week of May 9, 1964 at the rate of $60.00 a week, which was changed to $65.00 a week beginning with the week of June 13, 1964. This payroll record indicates that Mr. Dumaine worked exactly 40 hours each week that he was on the G.A.M. payroll. He testified that he reported for work at 7:30 a. m. on Mondays through Fridays, never worked on Saturdays or Sundays, but worked at late as 11:00, 12:00 or 1:00 a. m. on the five weekdays. He estimated that he worked during the first four months between 12 and 16 hours a day each of the five weekdays. He further testified that in July, August and September, during the so-called "boating season," he reported to work between 9:30 and 9:45 a. m. and that in this period he would work between 12 and 16 hours a day Mondays through Thursdays, but would not work beyond 4:00 or 4:30 p. m. on Fridays. He stated that from September to the end of the year he reported for work between 8:30 and 9:30 a. m. and worked overtime to ten o'clock some nights and until after midnight on others. On cross-examina-

tion Dumaine stated that in the first two months, May 9 to July 9, he estimated his average day at 12 hours. He conceded that during the time he worked for G.A.M. he also operated his own business, Dumaine Photo-Service & Electronics. However, he stated that he primarily operated this business on Saturdays and Sundays. He further testified that he was a member of the Civil Air Patrol and attended weekly meetings on Wednesdays between 8:00 and 10:00 p. m. during a portion of the time that he worked for G.A.M. Dumaine likewise testified that he never punched the time clock.

■ Defendant Andrew Nuttle testified that Dumaine was under instructions never to work more than 44 hours in any particular week. Work sheets were introduced in evidence, as defendant's Exhibit A, which were filled out by Dumaine covering the weeks beginning October 31, November 28 and December 12, 1964. These indicated that Dumaine worked one 9-hour and two 8-hour days the week of October 31; that he worked a 5-hour, and 11-hour, an 8-hour and a 10-hour day the week of November 28; and that he worked one 12-hour and three 8-hour days the week of December 12, 1964. Nuttle testified that because of the irregular hours Dumaine requested not to be on time cards and was put on a salary basis. I rule that as regards Frederic C. Dumaine, III, G.A.M. has failed to keep adequate and proper records and that the claim on his behalf is governed by the principles set out in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

■ I find that G.A.M. did not compensate Dumaine at the rate of time one-half his regular wage rate in those weeks in which he worked in excess of 40 hours. I find that he worked in excess of 40 hours in the months of May, June, October, November and December of 1964. Having in mind that defendant concedes that Dumaine worked a 44-hour week, and further having in mind that Dumaine's demeanor on the witness stand indicated that an animus has developed between him and the Nuttles, and having in mind that he substantially exaggerated the amount of overtime that he worked, and further having in mind that the burden is on the defendant to come forward with accurate records once the employee has given the Court a reasonable basis for finding that some overtime was worked by the employee, I find that Mr. Dumaine worked ten hours overtime a week during May, June, October, November and December 1964, i. e., that he worked ten hours a week overtime in 22 weeks, and that defendant G.A.M. is obligated to pay Mr. Dumaine $112.50 for the first five weeks and $413.10 for the remaining 17 weeks, or a total of $525.60.

■ It appears that none of the three above-named employees are any longer employed by G.A.M. and it further appears that the complaint of the Department of Labor is concerned only with these three employees. I rule that no showing has been made entitling plaintiff to injunctive relief against G.A.M. Electronics, Inc., or Andrew Nuttle.

### JUDGMENT

In conformity with the Court's opinion of this date it is

Ordered:

1. Judgment for plaintiff on behalf of claim of Frederic C. Dumaine, III, in the amount of $525.60, with interest.

2. Judgment for defendants as to claims on behalf of Frank W. Dickey and George Noble.

3. The application for injunctive relief is denied.