PAN AMERICAN WORLD AIRWAYS, INC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent; ELADIO MARRERO ET AL., Interveners.

No. O-68-287. Decided June 18, 1969.

*Hartzell, Fernández, Novas & Ydrach* for petitioner. *Antonio José Amadeo, José A. Suro, Elí Beléndez García, Ángel A. García,* and *José E. Amadeo* for interveners.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The antecedents of the case at bar are set forth in detail in *Pan American* v. *Superior Court,* 86 P.R.R. 132 (1962). It suffices to recall that insofar as pertinent, we decided therein that the employees of the aforementioned airline were only entitled to be paid for overtime at the rate of time and a half, except for the time worked in excess of twelve hours daily or forty-eight hours weekly or for work performed during the seventh day, in which case by contractual provisions of the collective agreements in force, they would be compensated at double rate. Right after, upon disposing of the cause we said:

"... it would seem that the appropriate disposition of this appeal would be to reverse the order entered and *to dismiss the complaint in all its parts,* for as we have indicated in the statement of facts, it appears from the affidavits attached to the motion for summary judgment, and which were not controverted, that *they were duly compensated for overtime.* However, from an examination of three of the collective agreements attached to said motion, the possibility arises that, *by reason of the changes in the shifts,* the plaintiffs worked in excess of eight hours during twenty-four consecutive hours or during the day of rest, which were paid to them at the regular rate. Since the proviso of § 5 provides for the payment of at least time and a half the regular rate, it is possible that a cause of action is not wholly lacking." (Italics ours.)

As a consequence the writ issued was quashed and the case was remanded to the trial court "for further proceedings not inconsistent with [the] opinion." The scope of our act was to order the Superior Court to examine the facts as established by virtue of the motion for summary judgment of the defendant therein in the light of what was established in *Ponce v. Fajardo Sugar Company*, 85 P.R.R. 575 (1962), which, incidentally, had not yet been decided when the order in the incident about summary judgment was entered.

When the record was remanded the trial court, at the request of complainants, appointed Mr. Elí B. Arroyo, on June 22, 1965, as special master, with the duty of examining all the daily assistance records during the period to which the claim refers, in order to determine whether complainants "were compensated *at a rate of time and a half* for work performed in excess of 8 hours during the consecutive period of twenty-four (24) hours, *on account of the change of shifts,* or during their day of rest. Several months later, complainants requested that the task entrusted to the special master be enlarged, so that it would include a report of extra hours worked under any circumstance whatsoever and not only on account of the change of shifts. We anticipate that they referred specifically to several minutes before the starting hour of the workday which appear when the time cards are punched. This request was provided for through an order which, though confusing in its wording, granted the request.[1] On account of an incident which occurred at a hearing before the Special Master, the question was again brought up to the trial court thereby giving rise to the order of October 17, 1968, where it is stated that "defendant's own records show *beyond any doubt* that on numerous occasions it did not pay hours worked by its employees at times not connected with

---

[1] In effect the Special Master's first report has a separate account of the extra hours worked daily in excess of 8 hours and those worked on account of the change of shifts.

the change of shifts," and, in view thereof, the court deemed that the proper thing to do was to receive evidence about all the hours not compensated for *"as it appears from the allegations of the complaint filed in this case."*[2] We agreed to review this order.

It should be noted immediately that the trial court was not authorized to conclude definitively that respondent's records showed that the extra hours worked by complainants had not been paid for. If the claim would lie it was necessary to give the company an opportunity to explain the apparent differences which appear from the time cards and it was necessary to hear evidence on this aspect of the controversy. Perhaps in anticipation thereof a sworn statement given by appellant's manager was introduced, stating that because of the difficulty of having all the employees punching the time clock at the precise minute on which the work is begun, it was customary to do so a few minutes earlier, but that the claimants did not actually begin to work until the hour indicated in the agreement. In *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), a similar situation was considered, it being stated by the United States Supreme Court that "Indeed, it would have been impossible for all members of a particular shift to be checked in at the same time in view of the rate at which the time clocks were punched. The first person in line at the clock would be checked in at least 8 minutes before the last person. It would be manifestly unfair to credit the first person with 8 minutes more working time than credited to the last person due to the fortuitous circumstance of his position in line," and it adds, "Moreover, it is generally recognized that time clocks do not necessarily record the actual time worked by employees." (At p. 690.) See also, 30 Am. Jur.2d,

---

[2] The controversy presented by the general allegations of the complaint was limited in conformance with the motion for summary judgment and the testimonies which were offered in support thereof, as we indicate hereinafter.

*Evidence*, §§ 1108 and 1109; *cf. Matías Rodríguez* v. *Social Programs Administration*, 92 P.R.R. 193 (1965).

Referring to the principal question involved in the appeal, it should be remembered that upon settling the incident about summary judgment it was admitted that claimants had received compensation for the extra hours worked at the rate of time and a half in conformance with the federal legislation and the agreements,[3] and that the whole controversy was reduced to a determination of law as to whether the applicable law was the state legislation, which required double pay for these same extra hours worked. See *Pan American* v. *Superior Court, supra* at 136, 137. At that time no objection whatsoever was raised to the motion for summary judgment, and it is after our judgment was rendered and the mandate was sent, that this claim is raised for the first time.[4]

 Only a few days ago, in *People* v. *District Court, ante*, p. 235, we explained that the mandate is the official means which we make use of to notify the trial court how we have disposed of the judgment or order object of review and to order compliance with the terms of our act. Once the mandate is received, the lower court should limit itself to comply with what has been ordered, which constitutes the law of the case between the parties. *Melón* v. *Muñiz*, 54 P.R.R. 171, 177 (1939); *Lluberas* v. *Mario Mercado e Hijos*, 77 P.R.R. 432, 435 (1954); *Commonwealth* v. *Ocean Park Development Corp.*, 79 P.R.R. 149, 163 (1956). The effect of the mandate reaches even those questions which could have

---

[3] Appellees rely on supposed inconsistencies in the sworn statements which were attached to the motion for summary judgment, and which, incidentally, were not controverted. This position does not have the importance allegedly attributed to it, and has been satisfactorily explained.

[4] It is intimated that it was the Assistant Special Master who, upon examining the time cards to make the computations of the extra hours on account of the change of shifts, realized the possible existence of a claim on account of the difference in minutes punched before the beginning of the workday.

been litigated, *cf. Graniela* v. *Yolande, Inc.*, 65 P.R.R. 663 (1946). Therefore, all that the trial court may consider is the question of extra hours worked on account of the change of shifts.

The order of the Superior Court, San Juan Part, of October 17, 1968, will be set aside, and the case will be remanded for further proceedings.