Rhonda K. Wood, Justice, dissenting. I respectfully dissent. As a result of the majority’s decision, Arkansas will repeat the past mistakes of the federal government, and the floodgates will open to litigation at' the enormous cost to businesses in Arkansas. In addition, the majority undermines the collective-bargaining process and destroys any confidence employers and employees have in the enforceability of their agreements.. The majority repeats the unfavorable history set in motion by the United States Supreme Court following its first interpretation of “work” and “workweek” under the FLSA. See Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690-91, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The initial version of the FLSA, 11 f,enacted in 1938, did not define “work” or “workweek,” and the United States Supreme Court, in turn, interpreted those terms broadly. It defined “work” as “physical or mental exertion (whether burdensome or nof) controlled or required by the employer and pursued necessarily and primarily for the benefit of -the employer and his business.” Tennessee Coal 321 U.S. at 598, 64 S.Ct. 698. It similarly defined “the statutory workweek” to “in-clud[e] all time during which an employee is necessarily required to be on the employer’s premises, on duty or at a prescribed workplace.” Anderson 328 U.S. at 690-91, 66 S.Ct. 1187. These decisions resulted in an outpouring of lawsuits at the expense of businesses. As the Supreme Court recently acknowledged, These decisions provoked a flood of litigation. In the six months following this Court’s decision in Anderson, unions and employees filed more than 1,500 lawsuits under FLSA. These suits sought nearly $6 billion in backpay and liquidated damages for -various preshift ■ and postshift activities. Integrity Staffing Sols., Inc. v. Busk, — U.S;—, 135 S.Ct. 513, 517, 190 L.Ed.2d 410 (2014). Fortunately, following' these decisions, Congress acted quickly and passed the Portal-to-Portal Act, which exempted employers from liability for future claims based on two specific categories: “walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform,” and “activities which are preliminary to or postliminary to said principal activity or activities.” 29 U.S.C. § 254(a)(1), (2). The United States Supreme Court recently held in Sandifer v. United States Steel Corp., — U.S.—, 134 S.Ct. 870,'187 L.Ed.2d 729 (2014), that “changing clothes” under § 203(o) includes protective clothing worn as part of the principal activities for which workers are employed. The majority repeats the mistakes of the past despite the fact that-the AMWA’s | ^regulations specifically instruct the state’s labor department to look to federal precedent under the FLSA: The department may rely on the interpretations of the U.S. Department of -Labor and federal precedent established under the Fair. Labor Standards Act in interpreting and applying the provisions of the Act and Rule 010.14-100 through -113, except to the extent a different interpretation is clearly required. ArLCode R. § 010.14-112 (emphasis added). The majority contends that the General Assembly’s silence signals a clear intent to depart from the FLSA. However, this is a departure from precedent. In instances where a state statute was silent on an issue, this court typically looked to analogous federal statutes and federal precedent. See Island v. Buena Vista Resort, 352 Ark- 548, 556, 103 S,W.3d 671, 675 (2003) (“We have explained that our state courts may look to federal decisions for persuasive authority when considering claims under the Arkansas Civil Rights Act.”); Kellar v. Fayetteville Police Dep’t, 339 Ark. 274, 279, 5 S.W.3d 402, 405 (1999) (“We have been given no reason why we should interpret Arkansas’s ex post facto clause in a manner contrary to the ... United States Constitution. Thus, we look to federal as well as state law for guidance.”); Barclay v. First Paris Holding Co., 344 Ark. 711, 726, 42 S.W.3d 496, 505 (2001) (“Our state system of income taxation is based on the federal system, and our legislature has consistently looked to the federal income tax regulations for guidance.”); UMLIC 2 Funding Corp. v. Butcher, 333 Ark. 442, 447, 970 S.W.2d 211, 214 (“Because [12 U.S.C.] section 1821 is silent regarding the rights of transferees and assignees, state courts addressing this issue have looked to the federal courts and the applicable state common law for guidance.”). ■ 117Similarly,' other courts have looked to the FLSA for guidance when their state labor statute is silent on a particular issue. See Mitchell v. JCG Indus., 929 F.Supp.2d 827, 833 (N.D.Ill.2013) (“Where the IMWL is silent on an issue, Illinois courts (and federal courts applying Illinois law) look to analogous federal statutes — the FLSA in particular — for guidance.”); Thompson v. Blessed Home Inc., 22 F.Supp.3d 542, 550 (E.D.N.C.2014) (“In interpreting the NCWHA, North Carolina courts look to the FLSA for guidance.”); Kirchoffv. Wi-pro, Inc., 894 F.Supp.2d 1346, 1350 (W.D.Wash.2012) (“[Tjhe Court may look to the FLSA for guidance in interpreting Washington’s Minimum Wage Act.”). Second, there is no clear evidence that the General Assembly intended the AMWA to set aside long-established contracts between employers and organized labor unions. We cannot forget that the bargaining parties here are a corporation and a union. Both are sophisticated and well-practiced negotiators. The record reflects that, it was the custom and practice between Gerber and the union to exclude donning and doffing activities from paid time. During negotiations, the union requested donning and doffing pay, but later abandoned that proposal. Following negotiations, the union accepted the terms of the contract. We cannot know whether the union received higher wages or' extra benefits in exchange for dropping its request for donning and doffing. Nevertheless, the employees received wage increases and other benefits as a result of the negotiations. The settled practice of excluding donning and doffing remained in place. Significantly, the AMWA discourages interpretations of the Act that interfere with or impede collective bargaining. Ark.Code Ann. § 11-4-205. Arkansas law specifically and 11srepeatedly provides that "the right to collectively bargain is of upmost importance to the public policy of this State. Arkansas Code Annotated' section 11-3-301 states, “Freedom of organized labor to bargain collectively and freedom of unorganized labor to bargain individually is declared to be the public policy of the state under Arkansas Constitution, Amendment 34.” Furthermore, Arkansas Code Annotated section 11-4-205 provides, “Nothing in this subchapter shall be' deemed to interfere with, impede, or in any way diminish the light of employers and employees to bargain collectively through representative of their own choosing in order to establish wages or other conditions of work.” Thus, there is- no need to engraft the FLSA’s § 203(o) exception into the AMWA as the majority opines. The AMWA’s own text demonstrates that collectively bargained-for agreements should be upheld. Furthermore, the majority’s statement that the plain language of the AMWA requires us to abrogate the collective-bargaining agreement between Gerber and the class employees is irrelevant’since the AMWA’s minimum-wage requirement has not been violated. The AMWA provides remedies for employees against only the “employer who pays any employee less than the minimum wages, including overcompensation or compensatory time off.” Ark.Code Ann. § ll-4-218(a). However, it is undisputed in this case that the employees’ wages were well above the required minimum wage. The parties agree that every class member earned almost three times the minimum wage. As section 11-^4 — 218(a) and (b) have not been violated, there is no remedy available to the class members.[1] |iaFor this court to abrogate the collectively bargained agreements between Gerber and its employees, which have customarily and generally excluded donning and doffing from the rate of pay, and afford the employees a windfall, is unjustified, particularly when the agreements do not violate the minimum-wage requirement. For these reasons, I would reverse the circuit court’s denial of Gerber’s motion for summary judgment and dismiss the case. Brill, C.J., and Hart, J., join. . Although section 11 — 4—218(b) states that "an agreement between the employee and the employer to work for less than minimum wages shall be no defense to the action,” that applies only if the agreement results in the employee receiving wages that are below the minimum — which clearly is not the situation in this case,