George P. SCHULTZ, Secretary of Labor,
Plaintiff,

v.

WILLIAM LEN HOTEL COMPANY,
Inc., and Southwest Hotels, Inc.,
Defendants.

Civ. No. 68–158.

United States District Court
W. D. Tennessee, W. D.

Oct. 7, 1969.

**428**

Bobbye O. Spears, Atty., U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Charles J. Lincoln, Little Rock, Ark., for defendants.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

In this case the Secretary of Labor seeks an injunction from further violations of the Fair Labor Standards Act and a restraint of withholding payment of minimum wages found by the court to be due employees of the defendants under the Act. The corporate defendants in this case are the William Len Hotel Company, Inc., hereinafter called Wm. Len, Inc., and the owner of all the stock of Wm. Len, Inc., Southwest Hotels, Inc., hereinafter called Southwest, Inc. The plaintiff alleges that the defendants have violated those provisions of the 1966 Amendment to the Act which allow the employer to take credit for tips which the employees receive, in computation of the minimum wage. 29 U.S.C. § 203(m). The complaint also charged the violation of child labor provisions of the Act concerning two minors. The defendants conceded that violation and have remedied the same.

The employees in question first came within the coverage provisions of the Act February 1, 1967. Representatives of the plaintiff made an investigation of the defendants in June and July, 1967. The complaint in this case was filed June 14, 1968, and the case was heard on April 10, 1969.

This opinion constitutes the court's findings of fact and conclusions of law based upon the testimony, the record and the post-trial briefs.

Wm. Len, Inc. operates a thirteen story hotel, which has 220 guest rooms, in the heart of downtown Memphis. This hotel is part of a chain owned by Southwest, Inc. Southwest, Inc. prepares the payroll and otherwise does the accounting and record keeping for Wm. Len, Inc. The Wm. Len Hotel was opened for business in 1930. It does not have facilities for banquets or conventions. It has a relatively small lobby with a news stand and there is a coffee shop which sells food and beer. A portion of the hotel building faces on Main Street but that portion is not connected by public entrance to the hotel and is rented to merchants not connected with the hotel operation. There is no liquor store in the hotel and no available parking in or adjacent to the building. During the period covered by this lawsuit, namely, February 1, 1967, to the date of trial, the hotel was operated as a "contract hotel". The guest list included large

numbers of bus drivers and railroad men who slept in the Wm. Len during layovers and military recruits awaiting transportation to military installations. There are approximately 20 permanent guests and very few transient guests.

In January 1967 the various managers of the hotels in the Southwest chain assembled in Hot Springs, Arkansas, at which time discussions were had concerning the method of compliance with the Fair Labor Standards Act, which was scheduled to become effective as to the hotels of the Southwest chain on February 1, 1967. The various managers participated in a discussion concerning all of the hotels and the respective hotels of each of them. Records pertaining to specific employees were not considered. As a result of the meeting, the employees whose services are disputed in this litigation and others were placed in the category of "tipped employees". The defendants took credit for 50% of the minimum wage in paying these employees. This 50% credit was 50 cents per hour commencing February 1, 1967; 57.5 cents per hour commencing February 1, 1968 and 65 cents per hour commencing February 1, 1969. 29 U.S.C. § 206(b).

After the investigation by representatives of the Department of Labor, three categories of employees were in dispute, a cook, two barbers and the bellmen. At the trial the defendants announced that they did not contest the charges of the plaintiff concerning the cook and that he was no longer being paid as a tipped employee. With regard to the barbers, the pay practice with respect to barbers was changed as a result of the investigation made in June and July, 1967. Subsequent thereto, in 1968, the barber shop was closed and at the time of the trial there was no indication that there were any plans to re-open it. The serious dispute concerns the tip credit for the bellmen. Basically, the bellmen work in three shifts per 24 hour period; 7:00 A.M. to 3:00 P.M., 3:00 P.M. to 11:00 P.M. and 11:00 P.M. to 7:00 A.M., the last shift being known as the "night shift". Except for the night shift, the bellmen work in pairs and alternate their duties during the shift between bellmen and elevator operators. During the day shift there is a Bell Captain who is a higher hourly paid employee, with supervisory responsibility over other bellmen, and has other duties, such as transporting deposits to the bank and records to the bus station for delivery to Little Rock, Arkansas, the home office of Southwest, Inc. Eight bellmen and former bellmen testified at the trial concerning their duties and tips. Their testimony was consistent to the effect that the Wm. Len Hotel has a clientele which offers very meager tip remuneration. This is said to be caused by the nature of the clientele. The railroad and trucking industry personnel checked in for limited periods and are regular customers who did not require bellman services. Many have little or no luggage, and they know where the soft drink and ice machines are located. The military recruits are young men with little or no luggage and very limited funds with which to tip. The approximately 20 permanent guests do tip from time to time for special services. The most promising source of tips, transient guests, the Wm. Len Hotel does not attract in any appreciable number.

In preparation for the trial, representatives of the plaintiff asked certain bellmen to keep records of their tips in January and February of 1969. These records were the basis of the testimony from some of the bellmen who were witnesses at the trial. There were considerable variations in many aspects of these records. They showed tips which varied between $1.86 per week and $6.80 per week. Some of the bellmen recorded the tips as they were received, others recorded them at the end of the shift or even later. Some of the records indicated average tips of 25¢; others showed tips from the same type clientele of 10¢ or 15¢. Some of the bellmen testified that they charge 25¢ for ice which they turned over to the management. One testified that he charged 25¢ plus any tip but did not turn any of the money over to the

management. This court finds that the inconsistencies in the records kept by the employees render them insufficiently reliable to determine the actual tip income received. This is not to say that supervised recordkeeping by these employees is not possible.

The testimony revealed that it has been the longstanding practice of the management to require bellmen to record every "bell" or call which the bellmen receive from a guest and which takes them above the lobby. These records are kept by and under the supervision of the Bell Captain, or bellmen when the Captain is not available. The records contain no information concerning tips but do contain information concerning the nature of the "bell". The purpose of these records is to afford information for security purposes, and in some instances to assist the management and police officers when complaints or disturbances arise in the hotel. The proof reflects that the manager of the hotel was insistent upon compliance with the keeping of these records. However, they were not permanent records.

The investigator for the Secretary made a recapitulation of the "bell" records and determined that those on the day and afternoon shift answered an average of 19½ and 21 bells per man per week. On the night shift the bellmen answered an average of 8½ bells per man per week. The investigator used an average tip of 25¢ per bell to determine if the bellmen qualified as tipped employees under 29 U.S.C. § 203(t), which requires a minimum of $20.00 per month for a person to be considered "a tipped employee". This computation resulted in average weekly tips of $4.875 and $5.25 based upon the average number of bells as reflected in the bell book. Undoubtedly, all bells were not recorded and there was a possibility of tips in the lobby. Therefore, he testified that the bellmen actually received about $8.00 per week in tips.

It should be noted that prior to the trial the defendants discontinued considering the bellmen on the night shift as "tipped employees" and changed their pay scale to the minimum wage without the tip credit. Obviously, this was brought about by the infrequent opportunities for tips at that hotel between the hours of 11:00 P.M. and 7:00 A.M.

The testimony also reflects that it was the custom for the bellmen to be called upon by the Bell Captain to pay him money each week on the theory that he was a supervisory employee and not eligible for as many tips. The former Bell Captain testified, and reluctantly admitted, that he did make demands on the bellmen for money each week with variable success. Some paid small amounts and others refused to pay. This fact is a deterrent from complete disclosure of tip income for pay purposes.

The record reflects that some of the bellmen had previously been involved in obtaining whiskey for guests illegally and have likewise been involved in assisting prostitutes. The court ruled during the trial that testimony pertaining to the amount of these tips, which were received for illegal purposes, was inadmissible upon the ground that such tips were not contemplated by the Fair Labor Standards Act to be included in the tip credits. Limited testimony of this nature was permitted for impeachment purposes and to show the difficulty of determining with complete exactness the tip income.

The manager of the hotel testified that an agressive bellman can "hustle" tips and thereby increase his income. In this regard, the term "hustle" does not have reference to illicit activities, it has reference to inquiry by the bellman if he may be of some particular service to a guest, such as "May I get you a newspaper?" or "May I get you some ice?"

Another relevant fact was established by the proof. The bellmen who worked during the period in question included aged and disabled men. Five of those who testified were disabled or on Social Security based upon their age.

Prior to the effective date of the Fair Labor Standards Act, the bellmen were

being paid $1.00 per day plus tips. At all times since February 1, 1967, the defendants have considered the bellmen tipped employees and have taken the maximum credit, namely, 50%, against the minimum wage. A brief written statement was furnished the employee on or about February 1, 1967, and thereafter on or about February 1st in the succeeding years when the minimum wage was increased pursuant to 29 U.S.C. § 206(b). There is no evidence of any attempt to explain the Act to the employees, nor has any attempt been made by the employer to determine the actual amount of tips received. By the same token, no employee has furnished any information concerning his tips to the employer. In this regard, the investigator for the Secretary of Labor made the compilation referred to above and the bellmen undertook to keep records at the request of the attorneys for the plaintiff in preparation for the trial.

29 U.S.C. § 203(m) provides in part as follows:

"In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that in the case of an employee who (either himself or acting through his representative) shows to the satisfaction of the Secretary that the actual amount of tips received by him was less than the amount determined by the employer as the amount by which the wage paid him was deemed to be increased under this sentence, the amount paid such employee by his employer shall be deemed to have been increased by such lesser amount."

Regulations promulgated by the Secretary on June 30, 1967, require the keeping of certain records for tipped employees. 29 CFR § 516.28. These may be summarized as follows: (1) payroll records should contain a symbol identifying each employee whose wage is determined in part by tips; (2) the weekly or monthly amount reported by an employee to the employer of tips received; (3) the amount determined by the employer by which each tipped employee's wages have been increased, this amount must be furnished the employee converted into an hourly rate in writing each time the credit is changed from the amount taken in the preceding week; (4) hours worked in each day in any occupation in which the employee does not receive tips and (5) the hours worked in each day in occupations in which the employee does receive tips. The testimony reflects that only the records referred to in (1) above were kept in this case.

■■ The court concludes from the proof that the bellmen and the Bell Captain on the day and afternoon shift met the test of tipped employees as set forth in 29 U.S.C. § 203(t). The court further concludes that the defendants did not make sufficient effort to determine the proper amount of tip credits with regard to each employee in the bellmen category and that the defendants did not keep the required records. The court further concludes that the actual tip income of the bellmen did not amount to 50% of the minimum wage in any year. The court is aware of the difficulty of this problem, particularly for these defendants in view of the nature of their hotel. However, as the court said in Mitchell v. Raines, 238 F.2d 186, 188 (C.A.5 1956):

"If he did not know, it was because he did not look, or looking, did not see, or want to see what was so plainly there."

For the determination of the relief to be granted, this court must apply the applicable portion of 29 U.S.C. § 217 which provides in part:

"The district courts * * * shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a) (2) of this title the restraint of any withholding of payment of minimum wages * *

found by the court to be due to employees under this chapter * * *."

■ Whether injunctive relief should be granted under this section is within the discretion of the trial court. Triple "AAA" Co. v. Wirtz, 378 F.2d 884, 887 (C.A.10 1967); cert. denied 389 U.S. 959, 88 S.Ct. 338, 19 L.Ed.2d 364; Wirtz v. Atlas Roofing Mfg. Co., 377 F.2d 112, 116 (C.A.5 1967).

It must be remembered that the section of the Act and the regulations of the Secretary pertaining to tipped employees were and are relatively recent and the defendants were without the benefit of interpretative authority in their application and practice. The very nature of tips and the manner in which they are received creates difficulty on the part of the employer in the determination of the amount received by its employees. The tips of the bellmen in the instant case create a particularly difficult problem. In the first place the tips of bellmen are not customarily dependent on a percentage of a charge as in the case of waiters and waitresses. Therefore, a determination of tips on the basis of gross receipts of the employer lacks complete reliability. Furthermore, in the instant case less reliability could be attributed to gross receipts because most of the receipts are paid, not by the guests, but by their employers, railroads, truck lines and the United States military forces.

In addition, there are numerous deterrents to complete disclosure of tips by the employees, such as loss of Social Security benefits, income taxes and the custom of the bellmen "rewarding" the Bell Captain with a portion of their tips.

The regulations pertaining to tipped employees contemplate some record keeping on the part of the employees. 29 CFR § 516.28, particularly when the credit taken by the employer is contested. 29 CFR § 531.7.

■ The plaintiff contends that this court should order restitution even though the computation of the amount would of necessity be approximate. In support of this contention the plaintiff cites Anderson v. Mt. Clemmons Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), wherein the Supreme Court held that the award of employee's damages under a Fair Labor Standards Act case might be based upon a reasonable approximation when the employer had not kept adequate records. See also Wirtz v. Chain Singh, 243 F.Supp. 239 (D.Canal Zone 1965) for authorities following the reasoning of the Mt. Clemmons case in a Section 217 case filed by the Secretary of Labor. However, this court is of the opinion that Mt. Clemmons is not controlling in the instant case with regard to the bellmen because part of the responsibility for record keeping was on the employees.

The regulation of the Secretary set forth in 29 CFR § 531.59 is also relevant in the determination of the retrospective application of the tipped employee provision with regard to the bellmen in this case. The regulation provides in part:

"As stated in Senate Report No. 1487 (89th Cong. 2d Session) [U.S.Cong. Code & Admr.News 1966 p. 3210] it is presumed that in the application of this special provision the [tipped] employee will be receiving at least the maximum tip credit in actual tips."

■ Although this court has found that the bellmen were tipped employees within the meaning of the Act and that they did not receive in actual tips the amount of credit taken, the court is of the opinion that the defendants should not be restrained from withholding a portion of the tip credit retrospectively for the period covered by this case. It is assumed that prospectively the defendants will comply with the Act and will explain to the employees the terms of the Act applicable to them and that they will require, to the best of the ability of the supervisory personnel, the compliance of the employees.

■ The court is of the opinion that the defendants should not be enjoined from further violations. However, the defendants should be enjoined from failure to keep records required by 29 CFR

§ 516.28 and should be restrained from withholding payment of minimum wages to the cook who was erroneously treated as a tipped employee from February 1, 1967, until the date shown by the payroll records when he was no longer considered a tipped employee. For this period he should be paid the full portion of his wage which was taken as a tip credit. A restraint of withholding minimum wage payments due with regard to the night bellmen is allowed. It shall apply to the full 50% credit taken from and after July 31, 1967, until the change to a minimum wage. With regard to the day and afternoon shift bellmen and the Bell Captain, the restraint from withholding minimum wages due is not allowed.