JEONG WOO KIM, on behalf of himself, FLSA Collective Plaintiffs and the Class, et al., Plaintiffs,

v.

511 E. 5TH STREET, LLC d/b/a Goat Town, Nicholas Morgenstern, and Joel Hough, Defendants.

No. 12cv8096–FM.

United States District Court, S.D. New York.

Signed Sept. 26, 2015.

Filed Sept. 30, 2015.

Anne Melissa Seelig, C.K. Lee, Shanshan Zheng, Lee Litigation Group, PLLC, New York, NY, for Plaintiffs.

Daniel Robert Swanson, Kevin Sean O'Donoghue, Helbraun Levey & O'Donoghue, LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

Plaintiff Jeong Woo Kim ("Kim") brings this action against defendants 511 E. 5th Street, LLC ("511"), d/b/a Goat Town, Nicholas Morgenstern ("Morgenstern"), and Joel Hough (collectively, the "Defendants"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 et seq. On December 13, 2013, the Court conditionally certified the case as a collective action under the FLSA on behalf of kitchen staff members employed by the Defendants. (ECF No. 49). Thereafter, Abdulaye Tounkara ("Tounkara") and Juan Saiteros ("Saiteros") joined the action as plaintiffs. (ECF Nos. 58, 59).

All three plaintiffs (collectively, the "Plaintiffs") have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In their motion, the Plaintiffs seek a determination that the Defendants: (a) failed to pay Kim and Saiteros overtime in violation of the FLSA and NYLL; (b) failed to provide the Plaintiffs with wage notices and wage statements in violation of the NYLL; (c) failed to pay Kim and Tounkara spread of hours premiums in violation of the NYLL; and (d) wilfully violated both the FLSA and NYLL, thereby entitling the Plaintiffs to recover liquidated damages. In addition, the Plaintiffs seek a determination that 511 and Morgenstern are jointly and severally liable under both statutes. Finally, the Plaintiffs maintain that they are entitled to an award of $47,489.50 in back wages, liquidated damages, and statutory penalties. (See ECF No. 68 (Mem. of Law in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem.")) at 3–4). For the reasons set forth below, the Plaintiffs' motion, (ECF No. 67), is granted in part and denied in part.

### I. *Relevant Facts*

Except where otherwise noted, the following facts are set forth in the light most favorable to the Defendants.[1]

The Defendants operate a restaurant in Manhattan known as "Goat Town." Morgenstern is the managing partner, handling the day-to-day operations of Goat Town, including the hiring and firing of employees, staff and payroll, and human resources. (Morgenstern Decl. ¶ 1; Morgenstern Tr. 8–9; *but see* Morgenstern Tr. at 24–25 (testimony that Morgenstern's payroll and human resources duties were limited to signing paychecks)).

In early 2012, Kim responded to a job listing posted by the Defendants, expressing interest in a sous chef position at Goat Town. (Kim Tr. 73, 77). In April 2012, Kim was hired on a "consulting basis," and

---

**1.** The factual recitation and discussion in this Memorandum Decision and Order are based upon: ECF No. 76 (Undated Decl. of Kevin Sean O'Donoghue, Esq., Ex. A ("Kim Tr.")); ECF No. 69 (Pls.' Local Rule 56.1 Stmt. of Material Facts ("Pls.' R. 56.1 Stmt.")); ECF No. 70 (Exhibits annexed to the Decl. of C.K. Lee, Esq., dated September 5, 2014 ("Ex.")); Ex. 1 (Dep. of Nicholas Morgenstern ("Morgenstern Tr.")); Ex. 7 (Decl. of Jeong Woo Kim ("Kim Decl.")); ECF No. 79 (Defs.' Opp. to Pls.' Stmt. of Facts Pursuant to Local R. 56.1 ("Defs.' R. 56.1 Stmt.")); ECF No. 75 (Decl. of Nicholas Morgenstern ("Morgenstern Decl.")); ECF No. 35 (Decl. of Nicholas Morgenstern in Opp. to Class Cert. ("Morgenstern Class Cert. Decl.")).

he remained at Goat Town until August of that year. (Morgenstern Tr. 21; Kim Tr. 81). At the time of his hiring, Kim was applying for a visa, and Goat Town agreed to serve as his sponsor. (Kim Tr. 82; Morgenstern Decl. ¶ 8). Since Kim lacked a social security number, Goat Town could not pay him through its regular payroll. Accordingly, as an alternative, the Defendants initially paid Kim $550 in cash each week. These payments later were reduced to $400 per week about five weeks before Kim's departure from the restaurant, after Kim abandoned his visa application and began working fewer hours. Kim did not receive any pay stubs, but the Defendants documented all of their payments to him at year-end on a "1099" form. (Pls.' R. 56.1 Stmt. ¶ 12; Morgenstern Decl. ¶ 4; Morgenstern Tr. 29–30, 40; Kim Tr. 86–87; Ex. 5).

Kim has significant culinary training, including degrees from the French Culinary Institute in Vancouver and the Culinary Institute of America. (Kim Tr. 18–21). Despite having been hired as a sous chef, however, Kim maintains that he actually worked as a line cook and that his primary duties involved cleaning, washing dishes, and preparing food. (Kim Decl. ¶¶ 1, 3). Kim also did butchering, helped with ordering and inventory, and occasionally helped with scheduling, but contends that he did not manage other staff members or have the authority to hire or fire, and never was asked to provide input regarding such decisions. (Morgenstern Decl. ¶ 8; Morgenstern Tr. 22; Kim Decl. ¶ 3; Kim Tr. 110–111).

Goat Town is open from 5 p.m. to 11 p.m. or 12 a.m. during the week. In addition, the restaurant serves brunch on weekends beginning at 10 a.m. (Morgenstern Tr. 42). Despite this schedule, Kim contends that he typically worked fourteen-hour days, either five or six days per week. (Kim Decl. ¶ 2).

The opt-in plaintiffs, Tounkara and Saiteros, have not submitted any affidavits or declarations detailing the circumstances of their employment. Tounkara, however, appears to have been employed by Goat Town from October 2012 until June 2013, (see Exs. 11, 13), and Saiteros appears to have been employed there from late April until mid-June 2011, (Ex. 12). According to Goat Town's time records, Tounkara's workday exceeded ten hours per day approximately once each week. (Ex. 13).

The Defendants maintain that all Goat Town employees other than Kim and the head chef were paid on an hourly basis and "receive[d] overtime at one and one-half their regular rate for all hours worked over 40 hours a week." (Morgenstern Class Cert. Decl. ¶ 5 (parentheses omitted); see also Morgenstern Tr. 25 ("Q. Do you pay your employees on a fixed salary basis? A. No.")). Kim disagrees, alleging that all kitchen staff members were compensated on a salaried, rather than an hourly, basis, and therefore did not receive overtime pay. Kim bases this assertion on complaints by other kitchen staff members that he had overheard. (Kim Decl. ¶ 4).

## II. *Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact" based on supporting materials in the record. Fed.R.Civ.P. 56. "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir.2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In deciding a motion for summary judgment, the Court must "view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible inferences" in favor of that party. *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 78 (2d Cir.2002); *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). To defeat a motion for summary judgment, the nonmoving party cannot simply rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the Court. *Fischl,* 128 F.3d at 55; *see also* Fed.R.Civ.P. 56(e) 1963 Advisory Committee's note. Thus, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." *Fischl,* 128 F.3d at 55.

### III. *Analysis*

#### A. *Overtime*

The FLSA establishes a minimum hourly wage that employers must pay their employees and requires that the employers pay overtime wages, at a rate of one and one-half times an employee's normal hourly rate, for any hours worked in excess of forty hours in a single week. 29 U.S.C. §§ 206, 207. The NYLL requires overtime pay that is consistent with the FLSA. *See* 12 N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.2 ("An employer shall pay an employee for overtime ... in the manner and methods provided in and subject to the exemptions of [the FLSA].").

 At the summary judgment stage, "if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 362 (2d Cir.2011) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). An employee may "meet this burden through estimates based on his own recollection." *Kuebel,* 643 F.3d at 362. The burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson,* 328 U.S. at 687–88, 66 S.Ct. 1187. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.*

The FLSA's overtime requirements nevertheless are subject to a number of exemptions. In this case, the Defendants evidently contend that Kim is exempt from those requirements because he was "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The bona fide executive exemption applies to any employee:

(1) [c]ompensated on a salary basis at a rate of not less than $455 per week ..., exclusive of board, lodging or other facilities; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees

or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Insofar as relevant, the bona fide professional exemption applies to any employee: (1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week ..., exclusive of board, lodging, or other facilities; ... (2) [w]hose primary duty is the performance of work: (i) [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction....

*Id.* § 541.300(a). Chefs may fall into the exemption for professionals. As the Code of Federal Regulations explains, "executive chefs and sous chefs, who have attained a four-year specialized academic degree in a culinary arts program, generally meet the duties requirements for the learned professional exemption." *Id.* § 541.301(e)(6). On the other hand, "[t]he learned professional exemption is not available to cooks who perform predominantly routine mental, manual, mechanical or physical work." *Id.*

■ "[B]ecause the FLSA is a remedial act, its exemptions ... are to be narrowly construed." *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir. 1991). Moreover, an employer such as Goat Town "bears the burden of proving that its employees fall within an exempted category of the Act." *Id.*

### 1. *Kim*

The parties disagree as to whether Kim is exempt from the FLSA and NYLL overtime requirements. The Plaintiffs seek summary judgment that Kim is not exempt, noting that he earned less than $455 per week during the final weeks of his employment, had his salary lowered when his hours declined, and allegedly performed work more typical of a non-exempt line cook than a sous chef. (*See* Pls.' Mem. at 1–2, 6–12; Ex. 5). The Defendants maintain to the contrary that Kim is exempt because he was paid $550 per week for twelve weeks of his employment, resulting in an average weekly salary of more than $455 per week. They also suggest that his primary tasks were commensurate with those of an exempt professional chef and included various administrative duties. (Defs.' Mem. at 8–10; Morgenstern Decl. ¶¶ 7–9).

The parties also disagree with respect to the hours that Kim worked. Kim alleges that he often worked as many as fourteen hours per day, five or six days per week. (Kim Decl. ¶ 2). The Defendants contend that Kim worked closer to forty hours per week. (*See* Morgenstern Decl. ¶¶ 10–11).

■ Turning first to the issue of exemptions, both the executive and learned professional exemptions require as their first element that an employee be paid at least $455 per week and do not provide for income averaging. It therefore is apparent that the Defendants cannot invoke any exemption to the requirement to pay overtime for the last five weeks that Kim worked at Goat Town. Nevertheless, Kim was above the salary threshold earlier during his employment and appears to have studied cooking for a total of four years, earning two degrees. (*See* Kim Tr. 18–21). Depending on what his actual duties were, the Defendants may be able to prove that he was an exempt sous chef during this earlier time period. Summary judgment therefore must be denied to the extent that the Plaintiffs seek a ruling that Kim was not exempt from the overtime laws during the period that he was being paid $550 per week.

■ Turning to the hours that Kim actually worked, there are no records of his

time. Kim maintains that he typically worked fourteen hours per day, but the Defendants maintain that this is unlikely, given the hours that the restaurant was open. There is, in fact, some evidentiary support for the Defendants' position since the time records that do exist show that other kitchen staff rarely worked anything approaching fourteen hours per day. (*See* Ex. 13). Morgenstern also has testified that Kim's estimates of his time at work are exaggerated. (Morgenstern Tr. 16).

In sum, there is a factual issue as to how often Kim worked more than forty hours per week and the number of overtime hours that he worked during such weeks. For that reason, even if the Defendants are unable to claim that Kim was exempt from the overtime laws for some or all of the time that he worked at Goat Town, the Court cannot award summary judgment with respect to Kim's overtime claims.

### 2. *Saiteros*

■ The Plaintiffs seek summary judgment on opt-in plaintiff Saiteros' claim that the Defendants failed to pay him an overtime premium for the week ending April 24, 2011, despite his having worked fifty-six hours that week. (Pls.' Mem. at 14). The Plaintiffs base this claim on a Goat Town payroll spreadsheet for the week ending April 24, 2011, which indicates that Saiteros was paid his regular rate for the fifty-six hours that he worked that week. (*See* Ex. 8). According to that spreadsheet, Saiteros' hourly pay rate was $8.50, and he was paid a total of $476, suggesting that he received no overtime. The Defendants contend that this business record is insufficient to establish an overtime violation because Saiteros has not supplemented it with an affidavit or declaration stating that he worked overtime that week. (*See* Defs.' R. 56.1 Stmt. ¶ 10). As they explain, although the record shows that Saiteros was paid for fifty-six hours, no-

where does it say that he *worked* for fifty-six hours. (*Id.*).

The spreadsheet is curious because it confirms that seven other employees were paid overtime at one and one-half times their customary hourly rates that same week. Moreover, those employees' additional hours are reflected in a separate overtime column. By comparison, Saiteros' hours are all reflected in the column for non-overtime hours. While there might be some explanation for this anomaly, the Defendants have not challenged the authenticity of this business record, nor have they suggested any reason to doubt its accuracy. Accordingly, because the record satisfies the Plaintiffs' burden of showing that Saiteros worked fifty-six hours yet was paid no overtime, the Plaintiffs will be awarded partial summary judgment in favor of Saiteros for sixteen hours of overtime based on his $8.50 per hour base rate, *i.e.*, a total of $204.

### B. *Wage Notices*

Under the NYLL, at the time of hiring, employers must provide employees with a notice setting forth the employee's "rate[ ] of pay." N.Y. Lab. Law § 195(1)(a). For nonexempt employees, the notice also must state the "overtime rate of pay." *Id.* Any employee not provided such a notice within ten business days following their first day of employment, "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." *Id.* § 198(1–b). The wage notice requirement went into effect on April 9, 2011, and thus appears applicable to each of the Plaintiffs. *See Cuzco v. F & J Steaks 37th St. LLC*, No. 13 Civ. 1859(PAC), 2014 WL 2210615, at *3 (S.D.N.Y. May 28, 2014).

### 1. *Kim*

Kim contends that Defendants never furnished him with a wage notice at the time he was hired. (Pls.' Mem. at 15; Kim Decl. ¶ 7). In support of this claim, Kim cites an email exchange between Morgenstern and his counsel, in which Morgenstern appears to concede that the Plaintiffs did not receive any written wage notices when they started working. (*See* Pls.' Mem. at 14–15; Ex. 10).[2] The Defendants do not dispute the accuracy of Morgenstern's admission, but instead assert that the email exchange is privileged and, therefore, inadmissible. (Defs.' R. 56.1 Stmt. ¶ 7). Assuming that the email is inadmissible, Kim still has stated under oath that he never received a wage notice, (Kim Decl. ¶ 7), and the Court must credit that assertion in the absence of any evidence to the contrary. Here, there is no such evidence.[3] Moreover, during his deposition, Morgenstern appears to have again conceded that the Defendants did not furnish a notice to Kim when he started work. (*See* Morgenstern Tr. 22). Kim is therefore entitled to summary judgment with respect to his wage notice claim.

### 2. *Saiteros and Tounkara*

Saiteros and Tounkara allege that the Defendants similarly failed to furnish them with wage notices at the time of their hiring, or at any time thereafter. (Pls.' Mem. at 15–16). Their wage notice claims differ from the wage notice claim asserted by Kim, however, because they have not furnished the Court with any sworn statements establishing that the Defendants failed to provide them with such notices. (*See* Pls.' Mem. at 15; Pls.' R. 56.1 Stmt. ¶ 11). Instead, these Plaintiffs maintain that they are entitled to summary judgment merely because the Defendants failed to produce copies of the required notices during discovery. (Pls.' Mem. at 15; Pls.' R. 56.1 Stmt. ¶ 11). Saiteros and Tounkara also presumably rely on the admission that Morgenstern made in his email exchange with his counsel. In that email, Morgenstern said that only "verbal" information was supplied when employees started to work at Goat Town. (*See* Ex. 10).

The Defendants note that Morgenstern testified during his deposition that Saiteros and Tounkara were, in fact, provided with wage notices. (Defs.' R. 56.1 Stmt. ¶ 11 (citing Morgenstern Tr. 30)). Although the transcript excerpt that the Defendants cite relates to "pay stubs," Morgenstern also testified that all of the Goat Town employees received certain documents required by New York State when they were hired:

> Q. If I was to come work for you, ... would you give me certain forms to fill out before I start working?
>
> A. Yes.
>
> Q. What kind of forms would you have me fill out?

---

**2.** Although the email exchange refers to "wage statements," it seems clear in context that Morgenstern and his counsel were discussing wage notices since the inquiry related to the time that the Plaintiffs "start[ed] working." (Ex. 10).

**3.** In their papers, the Defendants note that Kim received an IRS 1099 form at year end. (*See* Morgenstern Decl. ¶ 4). Assuming that the Defendants issued such a form to Kim, this still is insufficient to create a triable issue of fact with respect to his wage notice claim.

Section 195(1)(a) of the NYLL requires a wage notice to set forth certain detailed information concerning the employee's pay rate and pay day. Moreover, an employer must furnish such a wage notice to an employee at the time of hiring. N.Y. Lab. Law §§ 195(1), (2). A 1099 form, by comparison, merely lists the total amount of income that the recipient received during the prior year. (*See* www.irs.gov/pub/irs-pdf/f1099msc.pdf (last visited Sept. 29, 2015)). Such a retrospective summary obviously cannot constitute a wage notice within the meaning of the NYLL.

. . .

A. You would get a wage statement.

Q. When you say "a wage statement," in this context, what is the wage statement?

A. It's a document from the state website, fill it out according to what they require.

(Morgenstern Tr. 28–29). Morgenstern refers to this document as a "wage statement," but it seems apparent that he was in fact referring to a wage notice.

Morgenstern thus has made two inconsistent statements regarding whether notices were furnished to Saiteros and Tounkara when they were hired. Moreover, neither of these employees has stated under oath that they did not receive a timely wage notice. In these circumstances, there clearly is an issue of fact, and these Plaintiffs, therefore, are not entitled to summary judgment with respect to this aspect of their wage notice claim.

C. *Wage Statements*

Under the NYLL, an employer also must "furnish each employee with a statement with every payment of wages" that sets forth, among other information, "the dates of work covered by that payment of wages; ... rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. Lab. Law § 195(3). For all nonexempt employees, this statement must also "include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number

of overtime hours worked." *Id.* Any employee not provided such a wage statement is entitled to "recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." *Id.* § 198(1–d).

1. *Kim*

■ The Plaintiffs contend that the Defendants never provided Kim with wage statements when he was paid and therefore violated the NYLL. (Pls.' Mem. at 16–17). During his deposition testimony, Morgenstern admitted that Kim never received a "pay stub" while he was a Goat Town employee. (*See* Pls.' R. 56.1 Stmt. ¶ 12; Morgenstern Tr. 29). In the absence of any evidence to the contrary, this testimony alone is sufficient to meet the Plaintiffs' burden. Summary judgment therefore is granted in favor of Kim with respect to his wage statement claim.[4]

2. *Saiteros and Tounkara*

■ Saiteros and Tounkara similarly allege that the Defendants failed to provide them with wage statements when they received their pay. (Pls.' Mem. at 16–17). They have, however, failed to adduce any evidence to support this claim. (*See* Pls.' R. 56.1 Stmt. ¶ 13). Furthermore, Morgenstern testified at his deposition that Goat Town employees other than Kim did receive such statements:

Q. Did you provide pay stubs for all your other employees also?

A. Yes.

Q. Currently and before?

4. In an attempt to avoid this result, the Defendants once again seek to rely on their issuance of a 1099 form to Kim. (*See* Defs.' R. 56.1 Stmt. ¶ 12; Morgenstern Tr. 29–30, 32). This is, as a matter of law, insufficient to raise a triable issue of fact. It is undisputed that

Kim was paid in cash on a weekly basis. (*See* Morgenstern Tr. 83). A single, end-of-the-year 1099 form simply cannot satisfy the Defendants' duty to furnish Kim with a wage statement at the time of each of their payments to him.

A. Always.

Q. You always gave pay stubs to all your employees?

A. Always.

(Morgenstern Tr. 30). Morgenstern also has stated under oath that, unlike Kim, "[e]very other employee receive[d] ... wage statements." (Morgenstern Decl. ¶ 16).

Although Morgenstern's statements are admittedly general, they suffice to raise a question of fact as to whether Saiteros and Tounkara received wage statements along with their pay. Summary judgment as to the wage statement claims of these plaintiffs, therefore, must be denied.

### D. *Spread of Hours*

Under the NYLL, an employee is entitled to "receive one hour's pay at the basic minimum hourly wage rate ... for any day in which ... the spread of hours exceeds [ten] hours." N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.4. The term "spread of hours" is, in turn, defined as the "length of the interval between the beginning and end of an employee's workday," and it "includes working time plus time off for meals plus intervals off duty." *Id.* § 146–1.6. In the restaurant industry, effective January 1, 2011, employers must pay this spread of hours premium to "all employees ... regardless of a given employee's regular rate of pay." N.Y. Comp.Codes R. & Regs. tit. 12, § 146–1.6(d). The term "employee," however, excludes persons who fall within the exemptions for executive or professional workers. N.Y. Comp.Codes R. & Regs. tit. 12, §§ 142–2.14(c)(4)(i), (ii).

#### 1. *Kim*

Kim contends that he is entitled to spread of hours premiums because he typically worked fourteen hours per day throughout his employment at Goat Town. (*See* Pls.' Mem. at 17; Kim Decl. ¶ 2; Ex. 3). Indeed, Morgenstern conceded during his deposition that it was "possible" that

Kim at times worked more than ten hours per day during his employment at Goat Town. (Morgenstern Tr. 15–16).

Despite that concession, there is a factual dispute as to how many hours Kim actually worked on a daily basis. There also is the possibility that he may fall within an exemption from the obligation to pay spread of hours premiums for at least some of the time that he worked at Goat Town. For these reasons, the Plaintiffs are not entitled to summary judgment on the claim that Kim was improperly denied spread of hours pay.

#### 2. *Tounkara*

The Plaintiffs maintain that Tounkara similarly worked more than ten hours per day on a regular basis but did not receive spread of hours payments. (Pls.' Mem. at 17). Although the Plaintiffs' Rule 56.1 Statement does not set recite any evidentiary support for this claim, (*see* Pls.' R. 56.1 Stmt.), they have produced time records reflecting a number of dates between October 10, 2012, and June 23, 2013, when Tounkara apparently worked ten hours or more, (Ex. 13). The Plaintiffs also have produced weekly payroll spreadsheets for two weeks during October 2012, which they contend show that that no spread of hours payments were made. (Ex. 14).

The Defendants advance two arguments in an effort to defeat Tounkara's spread of hours claim. First, they contend based upon the decision in *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048(GEL), 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006), that Tounkara was not owed any spread of hours payments because her wages were "sufficiently above the minimum wage ... [to] cover this additional hour." (Defs.' Mem. at 10). In *Chan*, Judge Lynch noted that the spread of hours provision then in effect ensured "an additional wage only 'in addition to the *minimum* wage' required

under New York law." 2006 WL 851749, at *21 (emphasis in original). He therefore concluded that the duty to make such payments did not extend to "workers whose total weekly compensation [was] already sufficiently above the minimum rate." *Id.* Thereafter, however, the New York Department of Labor promulgated the New York Hospitality Industry Wage Order, which is codified at N.Y. Comp.Codes R. & Regs. tit. 12, § 146. Effective January 1, 2011, that regulation provides that "all employees in restaurants ... regardless of a given employee's regular rate of pay" must be furnished with a spread of hours premium. N.Y. Comp.Codes R. & Regs. tit. 12, § 146–1.6(d). It is undisputed that this provision was in effect at the time Tounkara began working at Goat Town. Consequently, the Defendants' assertion that they did not have to furnish Tounkara with a separate spread of hours payment for each day she worked more than ten hours because she was paid above the minimum wage is incorrect.

Second, the Defendants maintain that the Plaintiffs have provided "no evidence" with respect to the days that Tounkara worked more than ten hours. (Defs.' Mem. at 10). In fact, the Plaintiffs have proffered Goat Town's own daily time records, which seem to show that, over the course of her employment, Tounkara worked at least ten hours on numerous occasions, including two days in late October 2012. (*See* Ex. 13). They also have proffered payroll spreadsheets for the weeks during October 2012 that Tounkara worked those shifts. (*See* Exs. 13, 14). The Plaintiffs have not established, however, that the payroll spreadsheets reflect all of the payments that Tounkara received from Goat Town during those pay periods. Indeed, neither of those spreadsheets has been authenticated as a business record, much less explained. For these reasons, summary judgment will be denied with respect to Tounkara's spread of hours claim.

### E. *Joint and Several Liability*

 The Plaintiffs further contend that even though they were employees of 511, d/b/a Goat Town, defendant Morgenstern should be held jointly and severally liable because he too is an "employer" within the meaning of the FLSA and the NYLL. (Pls.' Mem. at 18–19). The definitions of the term "employer" under the FLSA and NYLL are coextensive. *See Cruz v. Rose Associates, LLC,* No. 13 Civ. 0112(JPO), 2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013). Thus, under either of the statutes, when a court is asked to determine whether an individual is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, ... with an eye to the 'economic reality' presented by the facts of each case." *Moon v. Kwon,* 248 F.Supp.2d 201, 236 (S.D.N.Y.2002) (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999)); *see Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961) (under the FLSA, " 'economic reality' rather than 'technical concepts' is to be the test of employment."). Among the factors to be considered in determining whether an individual is an employer are " 'whether the alleged employer [ (1) ] had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' " *Moon,* 248 F.Supp.2d at 236 (quoting *Herman,* 172 F.3d at 139); *see also Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 66 (2d Cir.2003) (describing these factors as "useful largely in cases involving claims of joint employment") (quoting *Danneskjold v. Hausrath,* 82 F.3d 37, 43 (2d Cir.1996)). In general,

under these factors, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Moon*, 248 F.Supp.2d at 237 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983)). Continuous or absolute control is not required. *Moon*, 248 F.Supp.2d at 236.

 The Plaintiffs contend that Morgenstern is an employer for FLSA purposes because Morgenstern hired Kim, set his schedule, determined his rate of pay, and maintained Kim's employment records, thereby satisfying the economic reality test factors. (Pls.' Mem. at 18). In his deposition, Morgenstern conceded that he is the managing partner and sole member of 511, the entity that operates Goat Town. (Morgenstern Tr. 8). As he previously has explained, in those capacities, he "operated the corporation" and was responsible for "day-to-day restaurant operations." (Morgenstern Class Cert. Decl. ¶ 2). His duties included "hiring, firing, managing staff and payroll and human resources." (*Id.*). Morgenstern also is responsible for the restaurant's finances. (*Id.* ¶ 3).

The Defendants concede that Morgenstern had the power to hire and fire Goat Town employees, and that he maintained their employment records. (Defs.' R. 56.1 Stmt. ¶¶ 17, 20). Nonetheless, they dispute the Plaintiffs' remaining factual claims. (*Id.* ¶¶ 16, 18–19). Indeed, Morgenstern testified that he did not "directly" hire Kim, and that he hired, trained, and fired only management-level employees. (Morgenstern Tr. 20–21). He also explained that he might not interview an applicant for a position in the kitchen, which was the domain of the head chef, who would ultimately decide whom to hire. (*Id.* at 36–38). According to Morgenstern, he also did not set employee schedules, even though he had the authority to do so.

(*Id.* at 9; *see also* Kim Tr. 107–08 (indicating that Kim sometimes prepared the schedules but that "[i]t was [Morgenstern's] job")). Finally, Morgenstern has observed that other individuals shared the responsibility for the restaurant's daily operations and financial management, and that he did not in fact "do the payroll," although he signed the employees' paychecks. (Morgenstern Tr. 24–25).

 "An employer does not need to look over his workers' shoulders every day in order to exercise control." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir.1988). Moreover, the fact that employer power is exercised only rarely, does not mean that it is never exercised. *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir.2013). Here, although some of Morgenstern's statements are contradictory, it is apparent that he ran the show. Moreover, the fact that he may have delegated some of his authority to underlings scarcely suggests that he did not have operational control of the enterprise. *Moon*, 248 F.Supp.2d at 237. Accordingly, the Plaintiffs are entitled to summary judgment with respect to their claim that Morgenstern and 511 are jointly and severally liable under the FLSA and NYLL.

### F. *Liquidated Damages*

 The Plaintiffs also seek summary judgment establishing their entitlement to liquidated damages based on the wilfulness of the Defendants' conduct. Under the FLSA, liquidated damages in an amount equal to compensatory damages are mandatory, unless an employer demonstrates that it has acted in good faith and did not wilfully violate the statute. 29 U.S.C. §§ 216(b), 260. District courts consequently have the "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective

'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir.2008) (citing 29 U.S.C. § 260). The employer bears the burden of proving good faith and reasonableness by "show[ing] that it took 'active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them.'" *Id.* at 150 (quoting *Herman*, 172 F.3d at 142). This is a difficult burden, with "double damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142. Any liquidated damages that may be awarded are not considered a penalty, but rather "compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Id.*

Similarly, under the NYLL, an employee is entitled to liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1–a). For wages paid after April 11, 1011, the liquidated damages that an employee may recover under the NYLL are equal to one hundred percent of their actual damages, including unpaid wages, unpaid overtime, and spread of hours premiums. *See id.* §§ 198(1–a), 663(1); *Inclan v. N.Y. Hospitality Group, Inc.*, 95 F.Supp.3d 490, 501–02 (S.D.N.Y. 2015). Prior to the change in the law, the liquidated damages that employees were entitled to recover under the NYLL were limited to twenty-five percent of their actual damages. *See Inclan*, 95 F.Supp.3d at 504–05.

The Plaintiffs seek to recover liquidated damages under both statutes. (*See* Pls.' Mem. at 21). Prior to the change in the law, many courts permitted such recoveries, reasoning that the liquidated damages provisions of the FLSA and NYLL served different purposes. *See*

*Inclan*, 95 F.Supp.3d at 504–05 (citing cases). As Judge Buchwald has explained, however, such double recoveries should no longer be permitted. *See id.* at 504–07. Accordingly, any liquidated damages that are awarded in this case will be limited to one hundred percent of the Plaintiffs' damages.

### G. *Backwages, Liquidated Damages and Statutory Penalties*

Finally, the Plaintiffs seek an award of $47,489.50 in backwages, liquidated damages, and statutory penalties. (Pls.' Mem. at 22–25). The precise amount of any damages award to which the Plaintiffs may be entitled cannot be fixed until there have been findings of fact regarding such issues as the days and hours that the Plaintiffs actually worked and whether Kim is exempt from the FLSA's overtime provisions. Accordingly, summary judgment on the Plaintiff's claim for $47,489.50 in damages is denied.

### IV. *Conclusion*

For the foregoing reasons, the Plaintiffs' motion for summary judgment, (ECF No. 67), is granted in part and denied in part. Specifically, summary judgment is granted as to Saiteros' overtime claim, Kim's NYLL wage notice and wage statement claims, and the Plaintiffs' claim of Morgenstern's joint and several liability. Summary judgment is denied as to all of the other claims raised in the Plaintiffs' motion.

In view of this disposition, the Court will hold a pretrial conference in Courtroom 20A on October 20, 2015, at 5 p.m., to discuss a trial date.

SO ORDERED.