Filed 9/22/21; Certified for Publication 10/14/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BYRON JERRY MORALES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FACTOR SURFACES LLC, et al.,<br><br>    Defendants and Appellants. | B306652<br><br>(Los Angeles County<br>Super. Ct. No.<br>19STCV05373) |

APPEAL from judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed.

Caskey & Holzman, Marshall A. Caskey, Daniel M. Holzman and N. Cory Barari for Plaintiff and Respondent.

Schiffer & Buus, Eric M. Schiffer and William L. Buus for Defendants and Appellants.

# INTRODUCTION

Byron Jerry Morales sued his former employer, Factor Surfaces LLC ("Factor"), and its managing agent Gregory Factor (sometimes collectively referred to as appellants)[1] for, among other things, unpaid overtime wages, meal and rest break compensation, statutory penalties for inaccurate wage statements, retaliation, and wrongful termination in violation of public policy.

After a bench trial, the trial court entered judgment in favor of Morales in the amount of $99,394.16, which included $42,792.00 in unpaid overtime wages. Factor's sole contention on appeal is that the trial court erred in calculating Morales's regular rate of pay for purposes of determining the amounts owed to Morales for unpaid overtime. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Morales accepted a full-time position at Factor, a tile and flooring store, in 2016. His duties included cleaning the warehouse, accepting shipments, making deliveries to job site locations, picking up tile from distributors, and assisting customers in selection of tile. Morales's regular hours were Monday through Friday from 8:00 a.m. to 6:00 p.m. and Saturdays from 9:00 a.m. to 5:00 p.m. Beginning March 9, 2018, Morales no longer worked every Saturday. In or around 2018, after asking Factor to be compensated for overtime hours, Morales was terminated.

---

[1]    Morales also sued Bianca Factor, another managing agent of Factor. She is not a party to this appeal. For convenience, we will refer to Gregory Factor as "Gregory" and Bianca Factor as "Bianca." According to Factor's opening brief on appeal, Bianca filed for bankruptcy during the pendency of this action.

2

On February 14, 2019, Morales filed his complaint for inaccurate wage statements, failure to pay overtime, failure to pay wages owed, failure to provide meal and rest breaks, failure to reimburse necessary expenditures, failure to pay unpaid wages at time of discharge, violation of the unfair competition law (Bus. & Prof. Code, § 17200), retaliation, and wrongful termination in violation of public policy.

A bench trial began on March 4, 2020. Gregory testified Morales's employment records were in his truck, which was stolen while parked in his gated complex. When the truck was recovered, according to Gregory, nothing was in it.

Without records Gregory was unable to provide accurate testimony regarding Morales's rate of pay and hours worked. For example, in response to a question regarding Morales's hours, Gregory responded: "How can I remember? It was in [2016.]" Other responses were muddled. For example, in response to questions regarding whether he told Morales that Morales would be paid $120 per day, Gregory stated: "Approximately everything was overtime, it's $120 a day, something like that" and "I don't remember." Similarly, Bianca testified she could not state how many hours of overtime Morales worked. Her other testimony was similarly unclear or unhelpful to establishing the relevant facts. For example, when presented with a copy of a check Morales received for the week of September 17, 2016 in the amount of $1,209, Bianca testified: "I remember there was some reimbursement for lunch. Okay. There was an amount that was mistaken of [sic] his overtime, I think two or three checks prior to that, which was added to this check." She further testified Morales was not paid commissions, and she could neither tell from looking at the check, nor could she remember, how many hours Morales worked that week.

Morales testified he was hired to work at Factor for $120 per day, Mondays through Saturdays. He further testified he received 3 percent commission on sales, which was reduced to 1.5

3

percent at the end of 2017, and eventually cut to zero. At some point, Morales's compensation increased to $150 per day. Beginning March 9, 2018, Morales only worked two or three Saturdays per month.

Morales offered copies of the weekly checks he received from Factor during his employment, which were admitted into evidence. Factor did not produce a single document during discovery or offer any exhibits at trial.

Following the trial, the court issued a statement of decision. As relevant here, the court found Gregory and Bianca's testimony regarding theft of Morales's employment records to be "unbelievable and afford[ed] no weight to that testimony." It further found Factor was "unable to produce any time records or reliable evidence to convincingly dispute [Morales's] work hours or the manner in which [Morales] testified he was being paid." Both sides presented evidence, however, that "[Morales] regularly worked the shift of 8:00 a.m. [to] 6:00 p.m. on Mondays through Fridays and 9:00 a.m. [to] 5:00 p.m. on Saturdays." Thus, the court "accept[ed] [Morales's] estimate of 18 hours of overtime each week based on an undisputed 6-day work week and accept[ed] [Morales's] lower estimate of 14 hours of average overtime each week after March 9, 2018 (when [Morales] no longer worked every Saturday)."

To calculate the overtime wages owed to Morales, the court admitted the "Overtime and Meal/Rest Computations" chart provided by Morales, and attached the chart as exhibit 1 to the statement of decision. It concluded Morales's calculations were a "fair and accurate estimation of the overtime wages owed to him, given that there are no records showing the hours worked by [Morales], the rates of pay paid to [Morales], the overtime paid to [Morales] (if any), or the commissions paid to [Morales]." It also noted appellants were "unable to propose any other manner of reliably calculating [Morales's] wages that would be consistent with the law and the facts presented at trial." Accordingly, the

4

court found in favor of Morales on his claim for unpaid overtime wages and awarded him a total of $42,792.00 in unpaid overtime.

The court entered judgment against Factor, Gregory, and Bianca in the amount of $99,394.16.[2] Factor and Gregory appeal from the judgment.

## DISCUSSION

Calculation of an employee's overtime begins with a calculation of his "regular rate of pay." (See Lab. Code, § 510, subd. (a) ["Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."].) The regular rate of pay for an employee who receives a weekly salary is determined by dividing the weekly salary by the number of non-overtime hours worked (i.e., 40 hours). (See Lab. Code, § 515, subd. (d)(1) ["the employee's regular hourly rate shall be 1/40th of the employee's weekly salary"].)

The trial court calculated Morales's regular rate of pay by dividing his weekly paychecks by 40, the number of non-overtime hours Morales worked per week. Appellants contend the trial court erred by not isolating the commissions paid to Morales per week, and dividing those commissions by the actual number of hours Morales worked in a workweek (i.e., 50 or 58 hours) as opposed to 40 hours. Morales does not dispute the proper method for calculating the "regular rate of pay" for commission workers is to divide the total commission payments for the week by the actual number of hours worked during the week, including

---

2      In addition to unpaid overtime, the judgment included statutory penalties for Labor Code violations, prejudgment interest, and $25,000 in emotional distress damages.

overtime hours.[3] He counters, however, that where, as here, the employer failed to provide records demonstrating the portion of each weekly paycheck attributable to commissions (if any) and the actual number of hours worked by Morales each week, and failed to propose any manner in which the court could accurately estimate the commission payments, the court could properly divide the total weekly paycheck by 40 to approximate Morales's regular rate. We agree with Morales.

"[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee. In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages." (*Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 (*Hernandez*).) "'[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.' [Citations.]" (*Ibid.*, citing *Anderson v. Mt. Clemens*

---

3       Under California's Department of Industrial Relations, Division of Labor Standards Enforcement Policies and Interpretations Manual (DLSE Manual), a proper method for calculating the "regular rate of pay" for commission workers is to "divid[e] the total earnings for the week, including earnings during overtime hours, by the total hours worked during the week, including the overtime hours. For each overtime hour worked, the employee is entitled to an additional one-half the regular rate for hours requiring time and one-half and to an additional full rate for hours requiring double time." (DLSE Manual, § 49.2.12.)

6

*Pottery Co.* (1946) 328 U.S. 680, 687-688 [66 S.Ct. 1187, 90 L.Ed. 1515] (*Anderson*).)

As discussed above, appellants failed to provide any records demonstrating the hours worked by Morales, the rates of pay, overtime paid (if any), or commissions paid to Morales. The trial court therefore admitted a chart provided by Morales, which contained his calculations of overtime owed per week. Among other things, the chart contained a column titled "Regular Hourly Rate (Check/40 hours)." To compute the weekly regular rate for purposes of the overtime calculation, Morales divided his weekly total check by 40 hours (e.g., for the week of June 18, 2016, the total check ($720) divided by 40 hours equals a regular hourly rate of $18). The trial court found Morales's "proposed calculations to be consistent with the law, which also allows for commission payments to be included when determining regular hourly rate of pay."

Although the parties agree the portion of each weekly paycheck attributable to commissions should be divided by the total hours worked per week, here, there are no records demonstrating what portion of Morales's paychecks, if any, was attributable to commission pay. We note it may have been possible for appellants to have proposed a method by which the court could have estimated the portion of each weekly paycheck that may have been attributable to commissions. For example, the paycheck dated June 25, 2016 was in the amount of $736.60. Based on Morales's testimony that he was hired in 2016 to work six days a week for $120 per day, his weekly salary was $720. Thus, the difference between $736.60 and $720 was likely attributable to commission.[4] But perhaps because Bianca

4    This calculation would be more uncertain for paychecks later in Morales's employment at Factor because no one could testify precisely when Morales received a pay raise, and, after March 9, 2018, there are no records demonstrating which weeks Morales worked five days and which weeks he worked six days.

disclaimed Morales was ever paid commission, appellants failed to propose any such calculations or other manner of reliably calculating Morales's commission payments at trial (nor do they attempt to do so on appeal). Accordingly, we conclude the court did not err by attributing Morales's weekly paycheck to salary (and dividing the paycheck by 40 to obtain his regular rate) as opposed to speculating about the amount of commission paid each week, even if that calculation resulted in a slight windfall for Morales. (*Hernandez, supra,* 199 Cal.App.3d at p. 727 ["[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee."]; see also *Anderson, supra*, 328 U.S. at p. 688 ["The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records . . . ."].)

## DISPOSITION

The judgment is affirmed. Morales is awarded his costs on appeal.

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

9

Filed 10/14/2021

IN THE COURT OF APPEAL OF THE STATE OF

CALIFORNIA SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BYRON JERRY MORALES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FACTOR SURFACES LLC, et al.,<br><br>    Defendants and Appellants. | B306652<br>(Los Angeles County Super.<br>Ct. No. 19STCV05373) |

THE COURT:*

    The opinion in the above-entitled matter, filed on September 22, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for publication in its entirety in the Official Reports and it is so ordered.

    There is no change in judgment.

_____

 * CURREY, J.,        MANELLA, P.J.,        COLLINS, J.

1